# Illinois Official Reports

## Appellate Court

---

### *Dempsey v. Johnson*, 2016 IL App (1st) 153377

---

| | |
|---|---|
| Appellate Court Caption | PRINCESS DEMPSEY, Plaintiff-Appellant, v. MAXINE JOHNSON, Individually and in Her Official Capacity as the Clerk of the Village of Broadview, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-3377 |
| Filed | November 10, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-3955; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Reversed in part; affirmed in part. |
| Counsel on Appeal | Doug E. Ibendahl, of Chicago, for appellant.<br><br>Brian P. Gainer, Garrett L. Boehm, Jr., and Joel Brenord, of Johnson & Bell, Ltd., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Cunningham and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, Princess Dempsey, filed the instant action against the defendant, Maxine Johnson, individually and in her official capacity as clerk of the Village of Broadview (Village), seeking redress for alleged violations of her state and federal constitutional rights and rights under the Election Code (10 ILCS 5/1-1 *et seq.* (West 2012)). She appeals the circuit court's order dismissing her two-count third amended complaint (amended complaint) pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2    The allegations of the plaintiff's complaint may be summarized as follows. The plaintiff was an independent candidate who sought to be elected to the office of Village president in the April 9, 2013, consolidated election. Judy B. Brown-Marino, whose party affiliation is not alleged in the complaint, was a "direct opponent" of the plaintiff. Johnson, a democrat, served as Village clerk and was "allied with" Brown-Marino. The amended complaint alleges that Johnson, as Village clerk, was vested with certain "statutory powers and duties" regarding the 2013 consolidated election. For example, Johnson's "statutorily mandated duties" included certifying the names of candidates to be included on the ballot, issuing amended certifications, and publishing notices about the election. See 10 ILCS 5/7-60.1, 10-15 (West 2012). Johnson was also required to serve as a member of the Village's municipal officers electoral board (electoral board) and "pass upon objections to the nominations of candidates."

¶ 3    On December 26, 2012, the plaintiff filed her nominating petitions in the Village clerk's office. Johnson, through her election-related duties as Village clerk, had actual knowledge of the plaintiff's political affiliation and knew that she was running against Brown-Marino. Allegedly, Johnson "took the extraordinary step" of removing the plaintiff's nominating petitions from her office in the Village and took them home to "assist" Brown-Marino in challenging the sufficiency of the petitions. Thereafter, Brown-Marino filed an objection to the plaintiff's nominating petitions seeking to strike the plaintiff's name from the ballot as a candidate for the office of Village president.

¶ 4    A hearing on the objection was held before the electoral board. See 10 ILCS 5/10-10 (West 2012). At the hearing, the plaintiff sought to "disqualify" Johnson as a member of the electoral board on grounds that she was biased, but the board voted 2-1 against the plaintiff's request. The plaintiff also sought, unsuccessfully, to subpoena Johnson to testify regarding "irregularities" in the processing of her nominating petitions. On February 14, 2013, following a hearing, the electoral board determined that the plaintiff's nominating petitions were insufficient under the Election Code and ordered the plaintiff's name to be removed from the ballot. The complaint does not provide the ground or grounds upon which the electoral board found the plaintiff's nominating petitions to be "insufficient." The complaint does allege, however, that Johnson voted in favor of striking the plaintiff's name from the ballot in an effort to "destroy" her candidacy.

¶ 5    Thereafter, the plaintiff filed a petition for judicial review in the circuit court of Cook County. See 10 ILCS 5/10-10.1 (West 2012). On March 7, 2013, the circuit court set aside the electoral board's decision and ordered the plaintiff's name to be printed on the ballot as an independent candidate in the April 9, 2013, consolidated election for the office of Village president.

¶ 6        At approximately 8 p.m. on April 8, 2013, the day before the consolidated election, Johnson disseminated a prerecorded message (robocall) to all registered voters in the Village. In the robocall, Johnson identified herself as the Village clerk and "official electoral officer" and falsely stated that the plaintiff was not a legitimate candidate, the plaintiff had been officially removed from the ballot, and any votes cast in the plaintiff's favor would be a "lost vote." The plaintiff states that Johnson used Village resources and personnel, including its "reverse 911 system" to robocall residents of the Village and that she acted willfully and wantonly in communicating false information to the voters. She asserts that, despite the circuit court's order, Johnson's robocall "communicated an amended certification" and effectively removed her name from the ballot. The plaintiff further alleges that Johnson treated her differently than similarly situated candidates in the consolidated election and that Johnson's discriminatory conduct was motivated solely by "political animus"—namely, the plaintiff's "political association" as an independent candidate. The plaintiff claims that Johnson "destroyed" her candidacy, suppressed votes in her favor, and caused her to lose the election.

¶ 7        On July 23, 2015, the plaintiff filed her two-count amended complaint. Count I of her amended complaint is brought under section 29-17 of the Election Code (10 ILCS 5/29-17 (West 2012)), which provides a cause of action for the deprivation of state and federal constitutional rights relating to elections. She claims that Johnson (1) deprived her of her right to freedom of association by retaliating against her for her political affiliation as an independent candidate (see U.S. Const., amend. I; Ill. Const. 1970, art. III, § 3), (2) violated her right to equal protection of law by treating her differently than all other candidates in the consolidated election (see U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2), and (3) violated section 9-25.1(b) of the Election Code (10 ILCS 5/9-25.1(b) (West 2012)) by using public funds to urge electors to vote against her. Count II of her amended complaint contains the same allegations as count I but is brought under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2012)). It alleges that Johnson violated her (1) first amendment right to freedom of association and (2) fourteenth amendment right to equal protection of law.

¶ 8        On August 12, 2015, Johnson filed a combined motion to dismiss the plaintiff's amended complaint. See 735 ILCS 5/2-619.1 (West 2014). She contended that, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), the plaintiff's amended complaint failed to state a claim because, among other reasons, it did not "identify any fundamental right of which [the plaintiff] was actually deprived." Johnson also argued that the allegations failed to establish that the "robo-call actually deprived [the] [p]laintiff of any civil rights" since the plaintiff's name remained on the ballot and voters had the opportunity to vote in her favor. Second, Johnson asserted that the amended complaint should be dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)) as the plaintiff's claims are barred by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2012)).

¶ 9        On October 23, 2015, after the matter was fully briefed, the circuit court entered a written order granting Johnson's motion to dismiss the complaint with prejudice for failure to state a claim. See 735 ILCS 5/2-615 (West 2014). This timely appeal followed.

¶ 10       Johnson's combined motion to dismiss was brought pursuant to section 2-619.1 of the Code which permits a party to move for dismissal under both sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-619.1 (West 2014). A section 2-615 motion challenges the legal sufficiency of a complaint based on defects apparent on its face. *K. Miller Construction Co. v.*

*McGinnis*, 238 Ill. 2d 284, 291 (2010). In ruling on such a motion, the court may consider only those facts apparent from the face of the pleadings, judicial admissions in the record, or matters of which the court can take judicial notice. *Id.* In addition, we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts which are favorable to the plaintiff. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. We review a dismissal under section 2-615 *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 11　　We first address the plaintiff's contention that the circuit court erred in granting Johnson's section 2-615 motion to dismiss count II of her amended complaint. Count II was brought pursuant to section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2012)) and alleged that Johnson, while acting under color of state law, violated the plaintiff's first amendment right to freedom of association (U.S. Const., amend. I), and fourteenth amendment right to equal protection of law (U.S. Const., amend. XIV).

¶ 12　　Initially, we note that the plaintiff filed her amended complaint against Johnson in both her individual and official capacity as Village clerk. As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [s]he takes under color of state law. [Citation.] Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which [a government official] is an agent.' " (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 n.55 (1978)); see also *Doe v. Calumet City*, 161 Ill. 2d 374, 400 (1994) (distinguishing between personal- and official-capacity suits). This distinction is important because different requirements exist for establishing personal and municipal liability in a suit brought under section 1983. As discussed in more detail below, in order to establish personal liability, " 'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.' " *Doe*, 161 Ill. 2d at 401 (quoting *Graham*, 473 U.S. at 166). Municipal liability, on the other hand, requires the plaintiff to make an additional "showing that the underlying deprivation resulted from a municipal policy or custom." *Id.* In the case at bar, we will address the plaintiff's individual- and official-capacity section 1983 claims, in turn.

¶ 13　　Section 1983 provides a private cause of action with respect to the violation of federal constitutional rights. The Act provides, in pertinent part, as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ***." 42 U.S.C. § 1983 (2012).

¶ 14　　The aim of section 1983 "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Section 1983 does not create substantive rights but instead creates a cause of action to remedy certain deprivations of rights elsewhere conferred. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim under section 1983, the plaintiff must allege that (1) Johnson's actions deprived her of a federal constitutional right; and (2) Johnson was acting under color of state law when engaging in the conduct complained of by the plaintiff. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 514 (1991) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). In this case, we begin our analysis

by examining whether count II of the amended complaint alleges sufficient facts demonstrating that the plaintiff was deprived of her federal constitutional right to freedom of association (U.S. Const., amend. I) and equal protection of law (U.S. Const., amend. XIV).

¶ 15 With respect to the first amendment claim, the plaintiff alleges that Johnson violated her right to freedom of association by retaliating against her based upon her political affiliation as an independent candidate and decision to run for the office of Village president. In support of this claim, the plaintiff alleges that Johnson, a democrat, sought to destroy her candidacy by robocalling Village residents and falsely informing them that the plaintiff was not a legitimate candidate and that any votes cast in her favor would be considered a "lost vote." According to the amended complaint, Johnson's conduct effectively removed the plaintiff's name from the ballot and caused the plaintiff to lose the election.

¶ 16 "The First Amendment affords the broadest protection to *** political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' " *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). The United States Supreme Court has "repeatedly held that freedom of association is protected by the First Amendment" (*Williams v. Rhodes*, 393 U.S. 23, 30 (1968)) and that restrictions on access to a place on the ballot burden the right to free association. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); see also *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992) ("access to a place on the ballot is a substantial right not lightly to be denied"); *Morial v. Judiciary Comm'n*, 565 F.2d 295, 301 (5th Cir. 1977) (engaging in political activity by running for public office is, like speech, protected by the First Amendment).

¶ 17 Significantly, the first amendment right to freedom of association protects not only the affirmative right to free association but also the right to be free from retaliation perpetrated by the government upon the exercise of that right. See *Smith v. Gilchrist*, 749 F.3d 302, 308 (4th Cir. 2014); *American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). By engaging in retaliation, public officials may place informal restraints on an individual's first amendment rights, "allow[ing] the government to produce a result which [it] could not command directly. [Citation.] Such interference with constitutional rights is impermissible." (Internal quotation marks omitted.) *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

¶ 18 To bring a first amendment retaliation claim, the plaintiff must allege that "(1) [she] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill [the right to free association]." *Arizona Students' Ass'n v. Arizona Board of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Further, to prevail on such a claim, the plaintiff need only show that Johnson "intended to interfere" with the plaintiff's first amendment rights and that she suffered some injury as a result; the plaintiff is not required to demonstrate that her first amendment rights were actually suppressed or inhibited. *Id.*

¶ 19 Turning to the first element, we find that the plaintiff's amended complaint adequately alleges that she engaged in constitutionally protected activities. Those activities included:

circulating petitions and gathering signatures to qualify as a candidate for the office of Village president; associating as an independent candidate; and engaging in political activity by running for public office. See *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186-87 (1999) (petition circulation is core political speech protected by first amendment); *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) (the first amendment protects the right of citizens "to band together in promoting among the electorate candidates who espouse their political views" (internal quotation marks omitted)). By associating as an independent candidate and running for public office, the plaintiff was exercising her right "to band together" with other citizens to promote her political views and to bring about political and social changes desired by Village residents. Thus, the plaintiff has sufficiently alleged that she engaged in the kind of core freedom of association activities that trigger the first amendment's highest levels of protection.

¶ 20    As to the second element, the plaintiff alleges that Johnson's retaliatory conduct "destroyed" her candidacy and removed her name from the ballot, thereby chilling her ability to exercise her right to freedom of association.

¶ 21    In considering whether Johnson's conduct adversely affected the plaintiff's first amendment rights, courts evaluate whether the "conduct would likely deter 'a person of ordinary firmness' from the exercise of [her] First Amendment rights." *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474, 500 (4th Cir. 2005). The ordinary-firmness test is an objective test that is "designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Garcia v. City of Trenton*, 348 F.3d 726, 728-29 (8th Cir. 2003). As such, courts have held that retaliatory conduct must have resulted in something more than a "*de minimis* inconvenience" to the exercise of first amendment rights. *Constantine*, 411 F.3d at 500. Applying the ordinary-firmness test, is a "fact intensive" inquiry and focuses on the status of the speaker, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts. *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

¶ 22    In this case, the plaintiff alleged that Johnson's robocall "destroyed" her candidacy, "suppressed the vote," and caused her to lose the election. As alleged in the complaint, Johnson's communication effectively removed the plaintiff's name from the voters consideration in that voters who listened to the robocall received false information regarding the plaintiff's eligibility to be a candidate for Village president. In particular, voters were told that the plaintiff was not a legitimate candidate, she had been removed from the ballot, and that any votes cast in her favor would not be counted. Thus, voters who wanted to vote for the plaintiff likely cast their votes for someone else.

¶ 23    Moreover, the plaintiff and Johnson's dispute is more than a disagreement between similarly-situated political rivals. Johnson, as Village clerk, was vested with certain statutory powers and duties, and she had access to Village personnel and resources, including its "reverse 9-1-1 system." The plaintiff, in contrast, was an independent candidate who sought to be elected to the office of Village president. The disparity in power between Johnson and the plaintiff is significant. And, according to the complaint, Johnson leveraged her power to "destroy" the plaintiff's candidacy in retaliation for exercising her first amendment right to participate in the election and associate as an independent candidate. *Garcia*, 348 F.3d at 729 (the plaintiff stated a first amendment retaliation claim where the mayor "engaged the punitive machinery of government in order to punish [her] for her speaking out").

- 6 -

¶ 24    While it is true, as Johnson asserts, that the plaintiff's name remained on the ballot and that voters were able to cast votes in her favor, the fact remains that her robocall had the practical effect of removing the plaintiff's name from the ballot since it clearly and unambiguously informed voters that any votes cast in her favor would be a "lost vote." As a consequence, the plaintiff's name was removed from voters' consideration, and voters who wanted to vote for the plaintiff likely cast their votes for other candidates. In any case, as noted above, the plaintiff need not be *completely* deprived of her first amendment rights in order to establish a retaliation claim; rather, she must show that Johnson's conduct resulted in something more than a "*de minimis* inconvenience" to her exercise of first amendment rights. See *Constantine*, 411 F.3d at 500 ("The cause of action targets conduct that tends to *chill* such activity, not just conduct that *freezes* it completely." (Emphases in original.)).

¶ 25    In our view, we believe that Johnson's alleged conduct resulted in something more than a "*de minimis* inconvenience" to the plaintiff's exercise of her first amendment right to freedom of association.

¶ 26    As to the third and final element of her first amendment retaliation claim, the plaintiff must establish that her protected activity was a substantial motivating factor in Johnson's conduct—*i.e.*, that there was a nexus between Johnson's actions and an intent to chill her right to run for public office as an independent candidate. *O'Brien v. Welty*, 818 F.3d 920, 933-34 (9th Cir. 2016). She may make this showing by relying on direct or circumstantial evidence. *Id.* at 934. For example, the plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that Johnson's purported reasons for her conduct are pretextual or false. *Arizona Students' Ass'n*, 824 F.3d at 870.

¶ 27    As circumstantial evidence of Johnson's retaliatory intent, the plaintiff alleges that Johnson was "allied with and assisted" Brown-Marino, "a direct opponent" of the plaintiff, and that, through her election-related duties as Village clerk, Johnson knew that the plaintiff was running against Brown-Marino as an independent candidate. According to the complaint, Johnson engaged in a course of conduct seeking to "destroy" the plaintiff's candidacy. For example, after the plaintiff filed her nominating petitions, Johnson took the "extraordinary step" of taking those petitions home and assisting Brown-Marino in filing an objection to the plaintiff's nominating petitions. Johnson, who served as a member of the electoral board, later heard the objection and voted to strike the plaintiff's name from the ballot based upon her apparent conclusion that the plaintiff's nominating petitions were insufficient under the Election Code. On judicial review, however, the circuit court set aside the electoral board's decision and ordered the plaintiff's name to be printed on the ballot. The amended complaint further alleges that, although the plaintiff's name appeared on the official ballot, Johnson again sought to "destroy" her candidacy by robocalling Village residents on April 8, the night before the consolidated election, and falsely informed them that the plaintiff was not a legitimate candidate, that her name had been removed from the ballot, and that any votes cast in her favor would be considered a "lost vote."

¶ 28    The nature and timing of the robocall is the strongest probative circumstance of Johnson's motivation, but the events leading up to the robocall may also be understood as showing a continuation of Johnson's animosity toward the plaintiff and her independent candidacy for public office. Considered together, the foregoing is enough to support the claim that the plaintiff's protected activity—running for public office as an independent candidate—was a "substantial or motivating factor" in Johnson's conduct in seeking to strike the plaintiff's name

- 7 -

from the ballot and "destroy" her candidacy. Accordingly, the amended complaint alleges sufficient facts identifying a nexus between Johnson's retaliatory intent and her conduct which was specifically devised to harm the plaintiff's candidacy for Village president.

¶ 29    For all of these reasons, we conclude that the amended complaint alleges sufficient facts demonstrating that Johnson's retaliatory actions deprived the plaintiff of her first amendment right of freedom of association.

¶ 30    Next, the plaintiff asserts that Johnson violated her fourteenth amendment right to equal protection of law. U.S. Const., amend. XIV. In count II of her amended complaint, the plaintiff alleged that Johnson subjected her to unequal and discriminatory treatment compared to similarly situated individuals—namely, "all other candidates included on the ballot for the 2013 consolidated election." She alleges that Johnson's discriminatory conduct was motivated by political animus, had no relationship to any legitimate state interest, and was intended to cause injury to the plaintiff.

¶ 31    The equal protection clause of the fourteenth amendment most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, or political affiliation, or because the person has exercised a "fundamental right," or because the person is a member of a group that is the target of irrational government discrimination. See generally *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601 (2008); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). To show a violation of the equal protection clause, the plaintiff must prove that Johnson's actions had a discriminatory effect and were motivated by a discriminatory purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). To demonstrate discriminatory effect the plaintiff is required to show that Johnson treated her differently than other similarly situated individuals. *Id.* at 636. "Discriminatory purpose" implies "that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." (Internal quotation marks omitted.) *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996); see also *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). When a defendant's discriminatory action is alleged to have burdened a fundamental right, as the plaintiff alleges here with respect to her right to freedom of association, the action is subject to strict scrutiny, meaning that the discriminatory action is permissible only if it is narrowly tailored to address a compelling state interest. *People v. Masterson*, 2011 IL 110072, ¶ 24; see also *Socialist Workers Party*, 440 U.S. at 184.

¶ 32    Viewed in a light most favorable to the plaintiff and viewed in the context of the plaintiffs' alleged political rivalry with Johnson and Brown-Marino, both discriminatory purpose and effect can be inferred from the pattern, nature, and timing of Johnson's alleged actions. As discussed above, the well-pled facts in the complaint establish that Johnson sought to have the plaintiff's name removed from the ballot shortly after the plaintiff filed her nomination papers. She assisted Brown-Marino, a direct opponent of the plaintiff, in filing an objection to the plaintiff's nomination, heard the objection while serving on the electoral board, and voted to have the plaintiff's name stricken from the ballot. Although the plaintiff's name was later placed on the ballot pursuant to a court order which set aside the electoral board's decision, Johnson robocalled Village residents the night before the consolidated election was to be held, and informed them that the plaintiff was not a legitimate candidate, had been removed from the ballot, and that any votes cast in her favor would be considered a "lost vote." Based upon the

nature and timing of Johnson's conduct, it must reasonably be inferred that the robocall was specifically devised to harm the plaintiff's candidacy for Village president.

¶ 33 We also find that the complaint sufficiently alleges that Johnson singled out the plaintiff and treated her less favorably than similarly situated candidates in the 2013 consolidated election. Johnson's disparate treatment is illustrated by her favorable treatment toward Brown-Marino, a direct opponent of the plaintiff. The reasonable inference drawn from the allegations referencing Johnson's alliance with Brown-Marino is that Johnson singled the plaintiff out and sought to prevent her name from appearing on the ballot. Indeed, there is no indication from Johnson that she treated the other candidates in a similar manner as she treated the plaintiff. Nor does Johnson identify a compelling state interest to justify her disparate treatment. The pattern, nature, and timing of Johnson's alleged conduct does the work of demonstrating Johnson's improper discriminatory purpose.

¶ 34 Based upon the foregoing analysis, we conclude that the plaintiff alleged sufficient facts establishing that she was deprived of her federal constitutional right to equal protection.

¶ 35 Having found that the facts contained in the amended complaint demonstrate that Johnson's conduct deprived the plaintiff of her constitutional rights under the first and fourteenth amendments, we next address whether the allegations satisfy the second element of a section 1983 cause of action—namely, that Johnson was "acting under color of state law" at the time of the conduct complained of.

¶ 36 The color-of-state-law requirement is "identical" to the fourteenth amendment's "state action" requirement (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)), and excludes, from the reach of section 1983, claims for "merely private conduct, no matter how discriminatory or wrongful" (internal quotation marks omitted) (*American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). To satisfy the color of law requirement, "[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1991); see also *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) (state action may be found where there is such a "close nexus" between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself). "[T]here is 'no specific formula' for determining whether state action is present. [Citation]." *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006). Rather, the question of whether a sufficiently close relationship exists "is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Academy*, 531 U.S. at 295. A court's determination is ultimately informed by the totality of the circumstances and turns on whether the state is sufficiently involved in the alleged activity to justify treating the conduct of a private individual as state action. *Id.*

¶ 37 Here, the plaintiff's complaint alleges sufficient facts establishing that Johnson was acting under color of state law at the time she robocalled Village residents. As alleged in the complaint, Johnson, as Village clerk, served as the Village's local election official and possessed a certain degree of authority over the consolidated election. She was responsible for, *inter alia*, collecting nominating petitions, certifying the names of candidates whose petitions were in conformity with the Election Code, issuing amended certifications, and publishing notices. See 10 ILCS 5/7-60.1, 10-8, 10-15 (West 2012). She also served as a member of the electoral board where she heard and passed upon objections to the nomination of candidates.

The Illinois's Election Code, therefore, has "cloaked" Johnson with "some degree of authority" over the consolidated election (*Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003)), and Johnson's status as Village clerk enabled her to execute a scheme to destroy the plaintiff's candidacy in a manner that private citizens never could have. See *West v. Atkins*, 487 U.S. 42, 49 (1988) (noting that the traditional definition of acting under color of state law requires that the defendant have exercised a power possessed by virtue of state law); *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001) (town supervisor acted under color of law where he telephoned a citizen of the town to tell him that he is going to be fined for building a deck without a permit). Indeed, Johnson exercised her statutory authority by disseminating a prerecorded message regarding the 2013 consolidated election in which she effectively removed the plaintiff's name from the voters' consideration.

¶ 38     Viewing the allegations in a light most favorable to the plaintiff, we believe that the totality of circumstances demonstrates that Johnson was a state actor who was acting under color of state law at the time of the conduct complained of.

¶ 39     In sum, count II of the amended complaint states a section 1983 claim against Johnson, in her individual capacity, where Johnson (1) was acting under color of state law and (2) deprived the plaintiff of her first amendment right to freedom of association and fourteenth amendment right to equal protection of law. As a consequence, the circuit court erred in dismissing that portion of count II of the amended complaint alleging a section 1983 claim against Johnson in her individual capacity.

¶ 40     Having found that the plaintiff stated a section 1983 claims against Johnson in her individual capacity, we next address whether she also stated a cause of action against Johnson in her official capacity.

¶ 41     As noted above, a suit against Johnson in her official capacity is essentially a suit against the Village. See *Graham*, 473 U.S. at 165. To establish municipal liability under section 1983, the plaintiff must establish that (1) she has suffered a deprivation of a constitutionally protected interest and (2) that the deprivation was caused by an official policy, custom, or usage of the municipality. *Monell*, 436 U.S. at 694. Since we have already determined that the plaintiff's complaint alleges sufficient facts to support a charge that she has been deprived of her first and fourteenth amendment rights, our sole remaining inquiry is whether the deprivation was caused by an official policy, custom or usage of the Village.

¶ 42     In *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000), the Seventh Circuit explained that, in order to sufficiently allege a section 1983 claim against a municipality, a plaintiff must allege that "(1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) [the] plaintiff's constitutional injury was caused by a person with final policymaking authority."

¶ 43     In this case, the plaintiff does not allege that the Village had a policy or custom that caused the deprivation of the plaintiff's rights. Nor is there any allegation in her amended complaint that Johnson was acting pursuant to any widespread practice. Instead, viewing the factual allegations in a light most favorable to the plaintiff, she appears to allege that Johnson possessed final policymaking authority on the Village's election-related matters, such that the Village can be held liable under *Monell*.

¶ 44    A final policymaker is an official of a municipality who "speak[s] with final policymaking authority" (internal quotation marks omitted) for the municipality "in a particular area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). The question of who qualifies as a final policymaker is one of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). A municipal official who exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area in which that official is not the final policymaker, cannot, by itself, establish municipal liability. *Id.* at 139-40 (Brennan, J., concurring in the judgment, joined by Marshall and Blackmun, JJ.).

¶ 45    Here, the plaintiff's complaint states that Johnson, as Village clerk, possessed authority pursuant to section 7-60.1 of the Election Code to certify the names of candidates, issue amended certifications, and publish notices regarding the consolidated election. 10 ILCS 5/7-60.1, 10-8, 10-15 (West 2012). As noted in *Pembaur*, 475 U.S. at 483, "[a]uthority to make municipal policy may be granted directly by legislative enactment." Here, sections 7-60.1, 10-8, and 10-15 of the Election Code indicate that municipal clerks are the official policymakers when it comes to certifying candidates' names to be included on the ballot and publishing notices. Thus, under state law, Johnson was exercising her final policymaking authority when she disseminated the prerecorded message notifying Village residents that the plaintiff's name had been removed from the ballot and that any votes cast in her favor would be considered a "lost vote." Because Johnson was given final policymaking authority, she was, in effect, the Village; her actions were the Village's actions. Therefore, the Village can be liable under *Monell* for any unconstitutional actions taken by Johnson pursuant to that authority. See *id.* at 480-81.

¶ 46    Based upon the foregoing analysis, we conclude that the circuit court erred in dismissing that portion of count II of the amended complaint, which asserted a section 1983 claim against Johnson in her official capacity.

¶ 47    We next address the plaintiff's contention that the circuit court erred in dismissing count I of her complaint under section 2-615. She asserts that she stated a claim under section 29-17 of the Election Code (10 ILCS 5/29-17 (West 2012)) based upon Johnson's alleged infringement of her (1) right to freedom of association, (2) right to equal protection of law, and (3) rights under section 9-25.1 of the Election Code (10 ILCS 5/9-25.1 (West 2012)).

¶ 48    Section 29-17 of the Election Code states as follows:

"Deprivation of Constitutional Rights—Liability. Any person who subjects, or causes to be subjected, a citizen of the State of Illinois or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States or of the State of Illinois, relating to registration to vote, the conduct of elections, voting, or the nomination or election of candidates for public or political party office, shall be liable to the party injured or any person affected, in any action or proceeding for redress." 10 ILCS 5/29-17 (West 2012).

The language and purpose of section 29-17, which is modeled after section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2012)), creates a private cause of action for violations of an individual's election-related federal and state constitutional rights. As such, we believe the plaintiff must prove the same two elements as in her section 1983 claim: (1) the defendant's actions deprived the plaintiff of a state or federal constitutional right, and (2) the defendant was

acting under color of state law when engaging in the conduct complained of by the plaintiff. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Doe v. Calumet City*, 161 Ill. 2d 374, 397 (1994).

¶ 49   At the outset, we note that the factual allegations underlying the freedom of association and equal protection claims in count I are indistinguishable from the freedom of association and equal protection claims in count II. The only difference is that the plaintiff alleges that Johnson violated Illinois's constitutional equivalent to the first and fourteenth amendments. See Ill. Const. 1970, art. I, § 2 ("No person shall be deprived of *** equal protection of the laws."); Ill. Const. 1970, art. III, § 3 ("All elections shall be free and equal."). Because we have found that the plaintiff stated a section 1983 claim based upon alleged violations of her federal constitutional right to freedom of association and equal protection of law, we similarly find that the plaintiff stated a section 29-17 claim based upon alleged violations of Illinois's constitutional equivalent. Accordingly, the circuit court erred when it dismissed that portion of count I, which asserted claims against Johnson, in her individual and official capacity, for depriving the plaintiff of her state and federal constitutional rights to freedom of association and equal protection of law.

¶ 50   Next, the plaintiff argues that she stated an additional claim under section 29-17 based upon Johnson's alleged violation of section 9-25.1(b) of the Election Code. In her complaint, the plaintiff alleges that Johnson misused public funds—*i.e.*, Village resources, personnel, and its "reverse 911 system"—by robocalling voters and falsely informing them that she was not a legitimate candidate. She asserts that Johnson's robocall urged electors to vote against her in violation of section 9-25.1(b). Section 9-25.1(b) provides as follows:

> "No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated for political or campaign purposes to any candidate or political organization. This Section shall not prohibit the use of public funds for dissemination of factual information relative to any proposition appearing on an election ballot, or for dissemination of information and arguments published and distributed under law in connection with a proposition to amend the Constitution of the State of Illinois." 10 ILCS 5/9-25.1(b) (West 2012).

¶ 51   Although the plaintiff contends that Johnson violated section 9-25.1(b), mere allegations that a state law was violated does not necessarily support a constitutional claim brought pursuant to section 29-17. See *Peraica v. Riverside-Brookfield High School District No. 208*, 2013 IL App (1st) 122351, ¶ 19 (violations of state law do not necessarily support a constitutional claim brought under section 1983). As noted above, section 29-17 allows a plaintiff to seek redress for deprivations of election-related *constitutional* rights; it is not a vehicle for asserting *any* election-related violations. In fact, this court has previously noted that the State Board of Elections is empowered to adjudicate such complaints. See *id.*; see also 10 ILCS 5/9-20 (West 2010) ("Any person who believes that a violation of this Article has occurred may file a verified complaint with the [State] Board [of Elections]."). In any case, the plaintiff's amended complaint fails to allege that Johnson's use of public funds to oppose her candidacy deprived her of an election-related constitutional right. As such, the circuit court properly dismissed that portion of count I alleging violations under section 9-25.1(b) of the Election Code.

¶ 52   In sum, we conclude that the circuit court erred in dismissing that portion of count I of the amended complaint alleging that Johnson, in her individual and official capacity, deprived the plaintiff of her state and federal constitutional rights to free association and equal protection of

law. The circuit court did not err, however, in dismissing that portion of count I of the amended complaint which alleged violations of section 9-25.1(b) of the Election Code.

¶ 53 Lastly, because we may affirm the judgment of the circuit court on any ground apparent in the record (see *Urban Partnership Bank v. Winchester-Wolcott, LLC*, 2014 IL App (1st) 133556, ¶ 8), we address Johnson's contention that the plaintiff's complaint should be dismissed under section 2-619 of the Code. Johnson asserts that her conduct in placing the robocall the night before the election is protected by section 2-210 of the Tort Immunity Act (745 ILCS 10/2-210 (West 2012)). She argues that she was acting within the scope of her employment as a public employee and is not liable for injuries caused by the information she provided in the robocall. We disagree.

¶ 54 A section 2-619 motion admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. *Capeheart v. Terrell*, 2013 IL App (1st) 122517, ¶ 11. In reviewing a motion to dismiss under section 2-619, the court is obligated to construe the complaint and the evidentiary material submitted in support or in opposition, in a light most favorable to the plaintiff, and to accept as true all well-pleaded facts in the complaint. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). Our review is *de novo*. *Lutkauskas*, 2015 IL 117090, ¶ 29.

¶ 55 The Tort Immunity Act protects local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2012). Section 2-210 of the Tort Immunity Act provides as follows:

> "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210 (West 2012).

In *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, our supreme court interpreted section 2-210 and held that it " 'unambiguously' does not immunize" willful and wanton conduct. *Id.* ¶ 43 (quoting *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391 (1996)). In so holding, the court explained that "where a provision of the Tort Immunity Act contains no exception for willful and wanton conduct, we will not read one in." *Id.* ¶ 44. Because section 2-210 expressly states that the provided immunity applies only to conduct that is negligent, the court determined that it falls within the "inventory of tort immunity provisions that unambiguously limit an immunity to cover only negligence." *Id.*

¶ 56 Throughout her complaint, the plaintiff specifically alleges that Johnson wilfully and wantonly provided false information to the voters with the intent to "suppress the vote" and cause injury to the plaintiff. Nowhere in the complaint does the plaintiff allege that Johnson's conduct was negligent or that she negligently misrepresented facts. As such, taking the allegations in the complaint as true, section 2-210 does not shield Johnson from liability.

¶ 57 For the foregoing reasons, we (1) affirm that portion of the circuit court's order that dismissed the section 9-25.1(b) claim as set forth in count I of the amended complaint; (2) reverse that portion of the circuit court's order which dismissed the section 29-17 freedom of association and equal protection claims as alleged in count I of the amended complaint; and (3) reverse that portion of the circuit court's order which dismissed the section 1983 claim in count II of the amended complaint.

¶ 58        Reversed in part; affirmed in part.