2023 IL App (1st) 230230-U

No. 1-23-0230

Order filed March 9, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CHARLES KUCINSKY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Sangamon County. |
| | ) | |
| v. | ) | No. 19 MR 00119 |
| | ) | |
| JOHN BALDWIN, NICK LAMB, KEVIN KINK, and MICHAEL ATCHISON, | ) | |
| | ) | Honorable |
| | ) | Jennifer Ascher, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1 *Held*:    The dismissal of the plaintiff's second amended complaint is affirmed in part and reversed in part. We affirmed the dismissal of the plaintiff's action against the defendants John Baldwin and Michael Atchison. We reversed the dismissal of the action against the defendants Nick Lamb and Kevin Kink in their individual capacities only, finding that the plaintiff's second amended complaint adequately alleged an action against Lamb under 42 U.S.C. §1983 predicated upon violations of the plaintiff's rights under the first, eighth, and fourteenth amendments to the

United States Constitution, and adequately alleged an action against Kirk under 42 U.S.C. §1983 predicated upon a violations of the plaintiff's rights under the eighth and fourteenth amendments to the United States Constitution.

¶ 2     The plaintiff, Charles Kucinsky, acting *pro se*, appeals from an order of the Circuit Court of Sangamon County dismissing his action against the defendants John Baldwin, Nick Lamb, Kevin Kink, and Michael Atchison brought pursuant to section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2018)) (herein after referred to as "section 1983"). For the reasons which follow, we affirm in part, reverse in part, and remand to the circuit court for further proceedings.

¶ 3     The plaintiff's *pro se* second amended complaint (complaint), which is the subject of the instant appeal, is a prolix, 49-page pleading, consisting of in excess of 130 paragraphs. The complaint asserts section 1983 claims against Baldwin, the former director of the Illinois Department of Corrections (IDOC), Atchison, IDOC's former Chief of Operations, Lamb the former warden of the Lawrence Correctional Facility (Lawrence), and Kink, also a former warden of Lawrence, alleging violations of the plaintiff's rights under the first, eighth, and fourteenth amendments to the United States Constitution (U.S. Const., amend. I, VIII, XIV). From that complaint we are able to glean the following allegations.

¶ 4     The plaintiff is an inmate in IDOC, serving an 85-year sentence. At all times relevant, he was incarcerated at Lawrence. On August 21, 2016, the plaintiff was placed in extreme disciplinary segregation for allegedly violating prison rules during an assault on a staff member at Pontiac Correctional Center. The plaintiff filed a grievance challenging his placement in disciplinary segregation which he won and was released from disciplinary segregation on December 9, 2016. That same day the plaintiff was placed in administrative detention (A.D.). The complaint alleged that the plaintiff was "served inadequate notice" of the pending A.D. placement hearing. Lamb told him that, because "[he] filed a grievance, he was gonna [*sic*] be placed in A.D. extreme isolation."

The plaintiff was confined in A.D. extreme isolation from August 21, 2016 until after the filing of his complaint in the instant action. The complaint defined "extreme isolation" as segregation where a prisoner is confined to his cell for more than 22 hours per day and given only extremely limited or no opportunities for "direct and normal" social contact. The plaintiff alleged that extreme isolation has been shown to cause a severe risk of physical and psychological harm. IDOC's data shows that prisoners in extreme isolation are nine times more likely to commit suicide.

¶ 5     The cell block where the plaintiff was being held in A.D. also held "crisis" cells for prisoners with "extreme mental health problems." Those prisoners yelled, screamed, and banged on their cell doors for hours. They also threw feces and urine. The plaintiff was subjected to constant noise and an "extremely putrid" smell. His cell was two to three "steps" long and one and one-half steps wide. It was "bug/vermin infested," and the plaintiff had no access to cleaning supplies.

¶ 6     The plaintiff was allowed two two-hour yard periods each week. The yard periods were allowed in a "dog kennel" type of cage area with no equipment and a solid concrete floor. The cage measured 4 steps by 15 steps. Whenever the plaintiff left his cell, he was placed in multiple restraints, escorted by multiple staff members, and strip searched. According to the complaint, these conditions were an "atypical and significant hardship."

¶ 7     As a result of being subjected to noise and putrid smells, the plaintiff suffers from headaches, loss of appetite, dizziness, vomiting, loss of sleep, and poor concentration. As the result of being confined to a small cell and being forced to sit on the bed, he suffers from lower back pain, muscle spasms, and muscle pain. The plaintiff has a history of mental illness since he was seven years old, including mood disorders, ADHD, PTSD, extreme depression, and anxiety. The Complaint alleged that confinement in A.D. exacerbated the plaintiff's mental illness.

¶ 8    The plaintiff was offered what he described as "sham/farce" A.D. hearings approximately once every 90 days. He received "inadequate" notice that failed to state the evidence that would be presented against him.

¶ 9    The plaintiff alleged that the John Howard Association (JHA), an advocacy group, publishes reports on Illinois prisons. The JHA reports detailed the size of cells and the amount of time prisoners were allowed out of their cells. He alleged that Baldwin authorized a report on the IDOC's use of extreme isolation in 2015 and 2106 in association with Yale College [*sic*] and the Association of State Correctional Administrators (Yale Report). The Yale report identified the physical and mental injury caused by extreme isolation. Kink and Lamb reviewed the 2013 and 2016 JHA Reports and were able to draw an inference that extreme isolation caused physical and mental injury. Kink and Lamb ignored the reports and their findings. Atchison, Kink, and Lamb reviewed the Yale report and were able to draw the inference that extreme isolation caused the plaintiff physical and mental injury. Atchison, Kink, and Lamb turned a "blind eye" to the report and ignored its findings.

¶ 10    On August 17, 2017, the plaintiff "personally notified" Lamb that he felt his mental health "was being exsasberated [*sic*] including his paranoia, depression anxiety and hopelessness." Lamb told him to "go to hell and to kill himself."

¶ 11    On October 10, 2017, Lamb toured the A.D. unit and observed the conditions, but turned a "blind eye" to them. The plaintiff spoke to Lamb at his cell and complained that his mental condition was being exacerbated. Lamb told him that A.D. was supposed to be "inhumane."

¶ 12    On March 7, 2018, the plaintiff told Kink that he was having daily suicidal thoughts. Kink told him that "he prayed [he would] kill himself." He also complained about the vermin and mice infestation, and Kink told him "that's the highlight of A.D."

¶ 13 On December 6, 2018, and December 13, 2018, the plaintiff spoke to Kink at the door to his cell. Kink told him that "he would never release [him] from A.D. as long as [he] was in IDOC custody and [he] belonged in Guantanamo Bay."

¶ 14 The complaint alleges three constitutional violations. According to the complaint, the plaintiff's first amendment rights were violated when he was placed in A.D. for engaging in protected speech, *i.e.*, filing grievances protesting the conditions of his incarceration. His eighth amendment rights were violated because he was mentally ill, and in light of his mental illness, the conditions of his confinement constituted cruel and unusual punishment because defendants were deliberately indifferent to the risks of harm to him. His fourteenth amendment rights to due process were violated because he was placed in A.D. without sufficient procedural safeguards.

¶ 15 Plaintiff requested $100,000 in compensatory damages, $100,000 in punitive damages, a declaratory judgement that extreme isolation violated the eighth amendment, an examination by a court appointed mental health professional, and an injunction requiring that he be housed in a cell in excess of 50 square feet and allowed out of his cell 16 hours per day.

¶ 16 The defendants jointly filed a combined motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)), seeking dismissal of the plaintiff's action under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2020)). The defendants sought dismissal under section 2-615, arguing that the plaintiff's second amended complaint failed to state a cause of action, and sought dismissal under section 2-619, asserting that the plaintiff's claims were barred by the doctrine of sovereign immunity.

¶ 17    The circuit court granted the defendants' motion and dismissed the plaintiff's action, finding both that his second amended complaint failed to state a cause of action and that his claims were barred by sovereign immunity. This appeal followed.

¶ 18    Before addressing the of merits of the issues raised by the plaintiff's appeal, we first address two preliminary matters. First, it is unclear from the second amended complaint whether the plaintiff seeks relief under section 1983 against the defendants in their official capacities, their individual capacities, or both. In the case of *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989), the Supreme Court held that neither a state, nor its officials acting in their official capacities, are "persons" who can be sued under section 1983. It follows, therefore, that, to the extent the plaintiff's second amended complaint might be interpreted as seeking relief under section 1983 from the defendants in their official capacities as state officials, it fails to state a cause of action. Based upon our finding in this regard, we need not address the defendants' argument that the plaintiff's action against them in their official capacities is also barred under the State Lawsuit Immunity Act (745 ILCS 5/1 *et seq.* (West 2020)).

¶ 19    Second, the defendants argue that the plaintiff's prayer for injunctive relief is moot. We agree. The plaintiff admits that, since his notice of appeal was filed in this case, he is no longer being held in A.D. "An appeal is moot when the issues involved in the trial court no longer exist because intervening events have made it impossible for the reviewing court to grant the complaining party effectual relief." *In re Benny M.*, 2017 IL 120133, ¶ 17. We will not render advisory opinions or decide cases merely to establish precedent. See *CGE Ford Heights, L.L.C. v. Miller*, 306 Ill. App. 3d 431, 441 (1999). To the extent that the plaintiff is seeking an injunction ending his confinement in A.D., his release has rendered the issue moot.

¶ 20    We turn next to the merits of the plaintiff's appeal. This appeal comes to us from the dismissal of the plaintiff's second amended complaint pursuant to sections 2-615 and 2-619 of the Code. Our review is *de novo*, regardless of whether the dismissal was based on section 2-615 or section 2-619 of the Code. *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 34.

¶ 21    A section 2-615 motion challenges the legal sufficiency of a complaint based on defects appearing on its face. *Becham v. Walker*, 231 Ill. 2d 51, 57 (2008). On review, we must determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff and taking all well-pleaded facts and reasonable inferences to be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action. *Id.*

¶ 22    A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 37 (citing *Carr v. Kock*, 2012 IL 113414, ¶ 27). On appeal, we must determine whether there is a genuine issue of material fact and whether the defendants are entitled to a judgment as a matter of law. *Id.*, (citing *Illinois Graphics Co.* v. *Nickum*, 159 Ill 2d 469, 494 (1994)).

¶ 23    To state a claim under section 1983 a plaintiff must allege that: (1) the defendant's actions deprived him of a federal constitutional right; and (2) the defendant was acting under the color of state law when engaging in the conduct complained of. *Dempsey v. Johnson*, 2016 IL App (1st) 153377, ¶ 14. Section 1983 does not create a new substantive right; rather, it creates a cause of action to remedy deprivations of rights conferred elsewhere. *Id.*

¶ 24    As stated earlier, the plaintiff's second amended complaint is an action pursuant to section 1983 against each of the defendants predicated upon their alleged violations of his rights under the first, eighth, and fourteenth amendments to the United States Constitution. Although, as stated earlier, a section 1983 action cannot be maintained against the state, or its officials acting in their official capacities, a section 1983 action may be maintained against a state official in his or her individual capacity for acts that violate the United States Constitution. See *Murphy v. Smith,* 844 F.3d 653, 660 (7th Cir. 2016); *Kucinsky*, 2020 IL App (3d) 170719, ¶ 51. Consequently, we review the alleged constitutional violations as they relate to each defendant in their individual capacity.

¶ 25    The plaintiff alleged that his rights under the first amendment were violated when he was placed in A.D. in retaliation for having filed grievances protesting the conditions of his incarceration. A retaliation claim under the first amendment has three elements. See *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). The plaintiff must allege that (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the defendant's action. *Id.*; see also *Kucinsky*, 2020 IL App (3d) 170719, ¶ 65 (applying three-part test to a prisoner's claim).

¶ 26    In this case, the defendants do not contest that filing a grievance by a prisoner is a protected first amendment right. See *Kucinsky*, 2020 IL App (3d) 170719, ¶ 66 ("a prisoner retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the prison system"). Nor do they contest that being placed in A.D. is the type of deprivation that would deter a prisoner "of ordinary firmness" from exercising his first amendment rights. See *Id.*, ¶ 67. Instead the defendants argue only that the plaintiff "failed to offer

factual allegations supporting a reasonable inference that his protected conduct, and not a staff assault, was a cause of his placement in administrative detention."

¶ 27    We find that, with respect to Lamb, the plaintiff did make allegations sufficient to establish that his conduct, filing grievances, was at least a motivating factor in his placement in A.D. The plaintiff alleged that during an administrative hearing on December 16, 2016, "Lamb notified [him] that he was being placed in A.D. for filing the grievance that resulted in [him] being released out of disciplinary segregation." He also alleged "Lamb specifically told [him] because [he] filed a grievance, he was gonna [*sic*] be placed in A.D. extreme isolation." If we accept these allegations as true, as we must, they establish that Lamb was motivated, at least in part, to place the plaintiff in A.D by reason of his having filed a grievance, a form of protected speech. However, the plaintiff's second amended complaint fails to allege similar allegations against Baldwin, Atchison or Kink or any other allegations that these three defendants violated his first amendment rights.

¶ 28    The plaintiff's second amended complaint asserts that the conditions of his confinement in A.D. constituted cruel and unusual punishment in violation of the eighth amendment to the United States Constitution. The plaintiff alleged that his placement in A.D. was made with deliberate indifference to his medical needs.

¶ 29    A prison official violates the eighth amendment through indifference only where two requirements are met. First, the deprivation alleged must be "sufficiently serious." Second, the prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In prison conditions cases, the state of mind that a plaintiff must allege is one of "deliberate indifference." *Id.* Deliberate indifference has both an objective and subjective component. First the risk of harm to the inmate must be objectively serious. Second, the official

must have actual, and not merely constructive, knowledge of the risk. *Gevas v. McLaughlin*, 798 F.3d 475 , 480 (7th Cir. 2015). Stated otherwise, the official " 'must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.' " *Id.* (quoting *Farmer*, 511 U.S. at 837).

¶ 30    The plaintiff's second amended complaint alleged that he suffered from "extreme depression, extreme anxiety, fatigue, nausea, cabin fever, daily suicidal thoughts, paranoia, loss of appetite, \*\*\* [and] extreme hopelessness." Assuming that these allegations are proven true, the risk of harm to the plaintiff by his placement in A.D. might well be found to have been objectively serious.

¶ 31    We next address the question of whether the plaintiff's second amended complaint alleged facts supporting reasonable conclusions that defendants were aware of facts from which an inference of substantial risk could be drawn and that they did draw that inference. We find that the plaintiff alleged sufficient facts to support both conclusions with respect to Lamb and Kink.

¶ 32    The plaintiff alleged that Lamb and Kink had "personally reviewed" the 2013 and 2016 JHA Reports that concluded that placing a prisoner in A.D. extreme isolation cause "physical and mental" injury. The plaintiff alleged that he "personally notified" Lamb that his mental health was being exacerbated because he was confined to his cell and that Lamb told him to "go to hell and kill himself." According to the complaint, Lamb told the plaintiff that "A.D. was suppose[d] to be inhumane." The complaint also alleged that the plaintiff told Kink that he was having daily suicidal thoughts and extreme feelings of hopelessness and that Kink stated that "he prayed [he] [would] kill himself." The plaintiff also complained about vermin and pest infestation in his cell, and Kink told him "[T]hat's the highlight of A.D."

¶ 33    Defendants acknowledge that the plaintiff alleged that he told Lamb and Kink that his confinement in A.D. was negatively affecting his mental health, and they responded only with "curt responses." Nevertheless, defendants argue that the plaintiff did not make out an eighth amendment indifference claim because he did not allege that prison's medical staff were aware of, yet not treating, the mental or physical harm caused by his confinement in A.D. In support of that argument, the defendants rely on the decision in *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). However, we find *Arnett* distinguishable. This is not a case where the plaintiff's complaints were investigated and referred to a medical professional who could have been expected to address those complaints. In this case, the plaintiff alleged that his complaints were ignored. We believe that the allegations in the second amended complaint, taken as true, support a reasonable inference that Lamb and Kink were at least indifferent to the potential harm to the plaintiff resulting from his confinement in A.D. and were at worst actively encouraging him to harm himself further. Accordingly, we conclude that the plaintiff adequately alleged the elements of an eighth amendment deliberate indifference claim against Lamb and Kirk.

¶ 34    Although the plaintiff alleged that Baldwin and Atchison were aware of studies suggesting that prolonged confinement in A.D. had adverse psychological effects on some inmates, the second amended complaint contains no allegations that either of these defendants was aware of the plaintiff's complaints or that they were personally involved in the decision to place the plaintiff in A.D. There is no vicarious liability in a section 1983 action. See *Steidl v. Gramley,* 151 F. 3d 739, 741 (7th Cir. 1988) (No vicarious liability for warden when prison guards were accused of security failures that allowed an attack on an inmate.) We conclude, therefore, that the plaintiff's second amended complaint failed to alleged facts supporting a claim that either Baldwin or Atchison

violated the eighth amendment's prohibition against cruel and unusual punishment predicated upon the plaintiff's confinement in A.D.

¶ 35    Finally, we address the plaintiff's assertions that the defendants violated his right to due process as guaranteed by the fourteenth amendment to the United States Constitution. The fourteenth amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "To state a valid due process claim under section 1983 a claimant must allege he (1) has a protected life, liberty, or property interest; (2) has suffered a deprivation of that protected interest; and (3) was denied due process." *Kucinsky*, 2020 IL App (3d) 170719, ¶ 77.

¶ 36    According to the plaintiff's second amended complaint, he was held in A.D from December 9, 2016, until the filing of his complaint in the instant action, May 10, 2021. He alleged the conditions of his confinement as set forth in paragraphs four through seven above. The plaintiff alleged that he was offered what he described as "sham/farce" A.D. hearings approximately once every 90 days and received "inadequate" notice of those hearings that failed to state the evidence that would be presented against him. The plaintiff argues that his fourteenth amendment rights to due process were violated because he was placed in A.D. without sufficient procedural safeguards.

¶ 37    The defendants argue that the allegations contained in the plaintiff's second amended complaint fail to set forth a claim under the fourteenth amendment because they do not support an inference that the plaintiff's administrative detention either impaired his liberty or was used as a pretext for indefinite confinement. They note that there is no allegation in the complaint that A.D. elongated the plaintiff's prison sentence. According to the defendants, the plaintiff failed to allege facts supporting an inference that the conditions of his confinement in A.D. differed meaningfully

from segregation's normal restrictions. They also note that the plaintiff was accorded a review of his continued A.D. every 90 days as required pursuant to section 504.690(c) of the Illinois Administrative Code. 20 Ill. Admin. Code § 504.690(c) (2017). According to the defendants, the plaintiff's placement in A.D. did not impose upon his liberty in any constitutionally meaningful way.

¶ 38    Inmates in correctional facilities have no liberty interest in avoiding transfer to discretionary segregation such as A.D. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 80. A liberty interest may be implicated, however, if prison officials restrain an inmate's freedom in a manner that "imposes atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); see also *Wilkinson v. Austin,* 545 U.S. 209, 224 (2005). Disciplinary segregation may trigger due process protections depending on the duration and conditions of the confinement. See *Wilkinson,* 545 U.S. at 224; *Sandin,* 515 U.S. at 486. "[A] liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Correctional Institution,* 559 F.3d 693, 697-98 (7th Cir. 2009).

¶ 39    According to the plaintiff's second amended complaint, he was kept in A.D. for 5 years in conditions which might reasonably be considered unusually harsh. We make no determination as to the truth of the allegations. However, taking the plaintiff's allegations as true as we must in reviewing a dismissal under either section 2-615 or section 2-619 of the Code, we find that the allegations of the plaintiff's second amended complaint are sufficient to state a violation of the plaintiff's due process rights under the fourteenth amendment.

¶ 40    The second amended complaint seeks relief under section 1983 against each of the defendants predicated, *inter alia,* upon their violation of his fourteenth amendment due process

rights. With respect to the defendants Lamb and Kink, the complaint makes certain specific allegations. As to Lamb, the complaint alleges that he was involved in placing the plaintiff in A.D, and personally observed the conditions of the plaintiff's confinement. The plaintiff alleged that he complained to Kink about the conditions of his confinement, including that his cell was infested with vermin and mice. Further, as wardens of Lawrence, Lamb and Kink were statutorily obligated to review the plaintiff's record in A.D. every 90 days to determine if continued placement was appropriate. 20 Ill. Admin. Code § 504.690(c) (2017).

¶ 41    The plaintiff's second amended complaint alleges that he was kept in A.D. for 5 years, the conditions of his confinement, and the personal involvement of Lamb and Kink in his confinement. We find that the pleading adequately alleged the elements of a fourteenth amendment due process claim against Lamb and Kirk. However, there are no allegations in the second amended complaint that either Baldwin or Atchison were personally involved in the plaintiff's placement or continued confinement in A.D. or that either of them was aware of the conditions of his confinement. We find, therefore, that the second amended complaint fails to allege facts supporting the elements of a fourteenth amendment due process claim against either Baldwin or Atchison.

¶ 42    Having determined that the plaintiff's second amended complaint fails to allege facts supporting a claim that either Baldwin or Atchison, acting in their individual capacities, violated the plaintiff's rights under the first, eighth, or fourteenth amendments to the United States Constitution, we affirm the circuit courts dismissal of the plaintiff's action against both of these defendants for failure to set forth causes of action against them under section 1983.

¶ 43    Based upon our findings that the plaintiff's second amended complaint adequately alleges facts in support of the claim that Lamb violated the plaintiff's rights under the first, eighth, and

fourteenth amendments to the United States Constitution, we reverse the dismissal of the plaintiff's section 1983 action against Lamb in his individual capacity. Based upon our findings that the plaintiff's second amended complaint adequately alleges facts in support of the claim that Kink violated the plaintiff's rights under the eighth, and fourteenth amendments to the United States Constitution, we reverse the dismissal of the plaintiff's section 1983 action against Kink in his individual capacity. We remand this matter to the circuit court for further proceedings consistent with this order.

¶ 44    Affirmed in part and reversed in part; cause remanded.