2021 IL App (1st) 210225-U

FIFTH DIVISION
MARCH 12, 2021

No. 1-21-0225

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| RICKIRA WASHINGTON, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| | ) | |
| ADAM WINSTON, | ) | |
| | ) | No. 21 COEL 22 |
| Defendant-Appellant, | ) | |
| | ) | Honorable |
| (KAREN YARBROUGH, in her official capacity as Cook | ) | Paul Karkula, |
| County Clerk, Defendant). | ) | Judge Presiding. |
| | ) | |
| | ) | |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1     Held: When an election authority fails to abide by a ballot forfeiture order issued by the State Board of Elections, a voter in the subject election has standing to seek a writ of *mandamus* to compel the election authority to remove the barred candidate's name from the ballot. The circuit court of Cook County did not err in issuing an order commanding an election authority to comply with her ministerial, non-discretionary obligation to obey the State Board's ballot forfeiture order.

¶ 2                                 BACKGROUND

¶ 3      In 2016, defendant-appellant, Adam Winston created a campaign committee under Article 9 of the Election Code (10 ILCS 5/9-1 *et seq.* (West 2018), designated as "Support for Adam Winston," to promote his candidacy for village president of the Village of Glenwood. Mr. Winston served as both chairman and treasurer of the committee. Mr. Winston's committee failed to file several required periodic financial reports for the committee. Through a series of orders entered between 2017 and 2020, the State Board of Elections (State Board) imposed civil penalties totaling $11,925 against the committee. Included in six of the State Board's notices sent to Mr. Winston during that period of time were admonitions stating: "If this is a candidate Committee," then the candidate (Mr. Winston) was "subject to ballot forfeiture pursuant to section 9-30 of the Election Code. *** As such, the name of your committee's candidate shall not appear upon any ballot for any office in any election while the penalty is unpaid." Because Mr. Winston failed to pay these penalties, the State Board issued a ballot forfeiture order pursuant to 10 ILCS 5/9-30 (West 2018) stating that Mr. Winston's name could not be printed on the ballot for any office. Shortly before the 2021 election cycle began, the State Board issued a ballot forfeiture list to all election authorities in the state, including Karen Yarbrough the Cook County Clerk, stating that Mr. Winston's committee had an outstanding civil penalty of $11,925 and that his name could not be placed on the ballot.

¶ 4      The office of village president is on the upcoming April 6, 2021 Consolidated Election ballot in Glenwood, and Mr. Winston filed nomination papers to be a candidate for that office. On or about January 28, 2021, the village clerk of the Village of Glenwood certified a list of candidates running in the April 6, 2021 Consolidated Election to the Cook County Clerk, defendant Karen Yarbrough. See 10 ILCS 5/7-13.1 (West 2018) (requiring local election officials to certify

candidates to the election authority no less than 68 days before the election). That list included the name of Mr. Winston as a candidate for village president. The State Board had issued its ballot forfeiture order regarding Mr. Winston at some time before the village clerk issued the certification of the April 6, 2021 Consolidated Election ballot. Also, as of the date of certification, Mr. Winston had never requested a hearing before the State Board to resolve his delinquency and ballot forfeiture.

¶ 5    On February 16, 2021, plaintiff-appellee Rickira Washington, a Glenwood voter and taxpayer, filed a three-count complaint in the circuit court of Cook County. The complaint recited the basic facts regarding Mr. Winston's committee, the State Board's forfeiture order, and Mr. Winston's current candidacy. The complaint also recited that, on information and belief, Clerk Yarbrough had not followed the dictates of the State Board's forfeiture order and had listed Mr. Winston's name on the ballot for the subject election. Count I of the complaint requested a writ of *mandamus* against Clerk Yarbrough commanding her to remove Winston's name from the ballot. Count II requested a declaratory judgment that Clerk Yarbrough was required to follow the State Board's forfeiture order regarding Mr. Winston and not list him on the ballot. Count III requested temporary and permanent injunctive relief against Clerk Yarbrough to require her to remove Mr. Winston's name from the ballot.

¶ 6    The plaintiff Rickira Washington moved for summary judgment, relying primarily on various undisputed governmental records which memorialized Mr. Winston's reporting delinquencies and the State Board's actions. The plaintiff argued that, based on these actions, Clerk Yarbrough had a clear ministerial duty and authority to exclude Mr. Winston's name from the ballot.

¶ 7    Clerk Yarbrough filed a cross-motion for summary judgment, arguing that the plaintiff had no standing as a taxpayer and voter to seek a writ of *mandamus* against her, and that there was no private right of action under section 9-30 of the Election Code. Further, Clerk Yarbrough stated that she exercised discretion in refusing to abide by the State Board's order, because of a temporary restraining order issued on August 26, 2004 by the circuit court of Cook County in the case of *Temple v. Illinois State Board of Elections*, case no. 2004 CH 13939. Clerk Yarbrough appended a copy of the temporary restraining order to her motion but did not provide a copy of the complaint to provide appropriate context. The *Temple* order stated that the plaintiff had shown a likelihood of success on the merits of a claim that sections 9-10 and 9-30 of the Election Code "violates various provisions of the Illinois constitution". The order noted that the candidate at issue was running for the position of Representative in the General Assembly, an office for which the qualifications for candidates are set forth in the state constitution—unlike the village president position at issue here, where the qualifications for candidates are set forth solely in state statutes. The *Temple* order continued the matter for status on a future date, and the record before us is silent as to what occurred later when the case ran its natural course. Thus, it is unclear what Clerk Yarbrough's citation of *Temple* was intended to illustrate.

¶ 8    Mr. Winston filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)), and combined that motion with his response to Mr. Washington's summary judgment motion. He also adopted Clerk Yarbrough's cross-motion for summary judgment by reference. Mr. Winston argued that plaintiff Washington lacked standing as a taxpayer and that only the State Board or the Illinois Attorney General could have sought relief against Clerk Yarbrough for disobeying the State Board's ballot forfeiture order. Further, he noted that he did not receive certain State Board notices because he was in the midst

of a divorce and had not corrected the address for his campaign committee in the State Board's records; and that he would pay a settlement amount to resolve the outstanding civil penalties, subject to approval at the next upcoming State Board meeting.

¶ 9     On March 2, the circuit court of Cook County entered an order: (1) granting plaintiff Washington's motion for summary judgment; (2) denying Mr. Winston's motion to dismiss; (3) denying Clerk Yarbrough's cross-motion for summary judgment; (4) reciting that "It is undisputed that Defendant Winston owed $11,925 in civil penalties to the Illinois State Board of Elections before and on the date of certification of the April 6, 2021 consolidated election ballot" and "The Clerk received the ballot forfeiture list from the Illinois State Board of Elections pursuant to 10 ILCS 5/9-30 and the name of Defendant Winston should not have been placed upon the April 6, 2021, consolidated election ballot"; and (5) ordering that Mr. Winston's name not appear on the ballot.

¶ 10     Mr. Winston appealed, but Clerk Yarbrough did not. On March 4, 2021, this court granted Mr. Winston's motion for an accelerated resolution, pursuant to Ill. Sup. Ct. R. 311(b) and set a briefing schedule under which the record and briefs were to be filed over the course of the next five days. On March 5, this court granted Mr. Winston's motion for stay in part, halting early voting and mailing of ballots for Village of Glenwood voters pending further order of this court. On the same day, this court denied plaintiff Washington's motion to dismiss without prejudice, Mr. Winston's alleged lack of standing to appeal.  However, plaintiff Washington was allowed to raise the issue in her brief, which she did.

¶ 11                                ANALYSIS

¶ 12     On appeal, Mr. Winston does not dispute any of the underlying facts. Instead, he contends that the circuit court erred in ordering Clerk Yarbrough to remove him from the ballot because: (1)

the administrative procedures set forth in Article 9 of the Election Code provided the sole remedy for one aggrieved by an election authority's failure to abide by a ballot forfeiture order issued by the State Board; and (2) plaintiff, Washington did not have standing to seek enforcement of the ballot forfeiture order.

¶ 13    Before we address Mr. Winston's assignments of error, we first address Ms. Washington's contention that Mr. Winston's appeal should itself be dismissed for lack of standing. See *In re Marriage of Nienhouse*, 355 Ill. App.3d 146, 149 (2004) ("The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions."). The issue of standing presents a question of law which we review *de novo. Malec v. City of Belleville*, 384 Ill.App.3d 465, 468 (2008). Plaintiff Washington argues that this case is essentially only against Clerk Yarbrough, the only party having the authority over ballot printing and issuance, and that Clerk Yarbrough has chosen not to appeal. Plaintiff Washington further notes that she named Mr. Winston as a defendant only out of an abundance of caution.

¶ 14    Putting aside the fact that it seems disingenuous to name an individual as a defendant and then state that the individual has no standing to appeal a judgment adverse to him, we find no merit to this argument. "The doctrine of standing is designed to preclude persons who have no interest [in] a controversy from bringing suit. The doctrine assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). Standing in Illinois requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The purpose of the doctrine of standing is to ensure that courts resolve actual controversies between parties rather than abstract questions or moot issues. *Owner–Operator Independent Drivers Ass'n.*

*v. Bower*, 325 Ill. App. 3d 1045, 1050 (2001). An actual controversy exists with respect to a particular party when the underlying facts of the case demonstrate "a concrete dispute that admits of an immediate and definitive determination of the party's rights." *Id*. at 1050.

¶ 15    As noted above, there are three counts to the complaint and the *mandamus* count is only one of them. While Clerk Yarbrough is a necessary party because of her ministerial role in preparing ballots for the election, Mr. Winston is the real party in interest because the gravamen of the case is that he should be declared ineligible to run in the upcoming election. Accordingly, Mr. Winston clearly has standing to appeal the judgment which removed him from the ballot.

¶ 16    We next review the merits of Mr. Winston's appeal. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." Id. "We review a trial court's entry of summary judgment *de novo.*" *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 17    Mr. Winston challenges plaintiff Washington's standing to seek relief regarding Mr. Winston's candidacy. In *Kluk v. Lang*, our supreme court rejected a similar challenge to a case brought by a voter. The two plaintiffs in *Kluk* were a rival candidate to a state legislative seat and— importantly here—a voter who was not involved in the dispute over the legislative seat. The court explained:

"In the present case, plaintiffs allege that their right to be represented by a duly elected legislator is violated by operation of the challenged statute. Lang does not dispute that there is an actual controversy. He merely asserts that plaintiffs lack sufficient interest in it. Yet, the fact that plaintiffs share their right of representation with other voters in the district does not mean that the right is any less personal. The essence of the democratic voting right is that it is equally and separately vested in each member of the electorate. The right to vote is not a common right of the public, such as the beneficial interest in property held in public trust, or the assurance that public funds will be expended lawfully. Rather, the voting right is by definition capable of being exercised individually by each voter; indeed, this is its genius. The right to be represented is intertwined with the right to vote and is likewise personal to each voter."

*Kluk v. Lang*, 125 Ill. 2d 306, 317 (1988). In a similar vein, our supreme court has often found that taxpayers or voters have standing to seek relief to enjoin the improper placement of referenda on ballots. See *e*.g., Chicago *Bar Assoc. v. State Bd. of Elections*, 137 Ill. 2d 394 (1990). Accordingly, we find that plaintiff Washington has standing to bring this lawsuit.

¶ 18    Mr. Winston also argues that the circuit court of Cook County lacked subject matter jurisdiction over plaintiff Washington's claim because her exclusive remedy was through the administrative procedures established in Article 9 of the Election Code. Section 9-30 of the Election Code (10 ILCS 5/9-30 (West 2018)) states:

"Ballot forfeiture. The State Board of Elections shall not certify the name of any person who has not paid a civil penalty imposed against his or her political committee under [Article 9 of the Election Code] to appear upon any ballot for any office in any election if the penalty is unpaid by the date required for certification. The State Board of Elections

shall generate a list of all candidates whose political committees have not paid any civil penalty assessed against them under this Article. Such list shall be transmitted to any election authority whose duty it is to place the name of any such candidate on the ballot. The election authority shall not place upon the ballot the name of any candidate appearing on this list for any office in any election while the penalty is unpaid, unless the candidate has requested a hearing and the Board has not disposed of the matter by the date of certification."

¶ 19     No party argues that section 9-30 is ambiguous. It is written in mandatory terms, using the word "shall" four times. "The use of the word 'shall' generally indicates that the legislature intended to impose a mandatory obligation." *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 16, citing *People v. Boeckmann*, 238 Ill. 2d 1, 15–16 (2010) and *Holly v. Montes*, 231 Ill.2d 153, 160 (2008). Moreover, the provision dictating a specific consequence for violation of the statute is additional evidence that the ballot forfeiture rule is mandatory. *Id.*, citing *In re M.I.*, 2013 IL 113776, ¶ 16.

¶ 20     Article 9 of the Election Code provides a comprehensive process for the disclosure of campaign contributions and expenditures. See generally 10 ILCS 5/9-1 *et seq.* (West 2018). Likewise, the Article establishes a system whereby "any person" may file a complaint with the State Board alleging a violation of the campaign contribution and expenditure rules. 10 ILCS 5/9-20 (West 2018). One common example is a complaint against a committee alleging that it failed to accurately report contributions. See, *e.g.*, *Cooke v. Illinois State Bd. of Elections*, 2019 IL App (4th) 180502. Upon receiving a complaint, the State Board conducts an administrative hearing regarding the violation and issues a final order which may be appealed directly to this court. 10 ILCS 5/9-22 (West 2018). Mr. Winston suggests that this procedure was the sole route through

which plaintiff Washington could have obtained the relief she seeks in this case. Essentially, he argues that Washington should have filed an Article 9 complaint with the State Board and sought, as a remedy, an order from the State Board—in turn—ordering Clerk Yarbrough to remove Mr. Winston's name from the ballot. However, this argument is circular because that result has already been obtained.

¶ 21    Mr. Winston already had ample opportunities to obtain a hearing regarding his delinquent reports. Over the years, the State Board sent numerous notices to the address which it had for Mr. Winston's committee.  However, Mr. Winston claims not to have received those notices, as it seems he neglected to update the address with the State Board's records.  Thus, his failure to attend to these essential matters including the notices resulted in a final State Board order directing that his name not appear on any ballot until his civil penalties were paid. The ballot forfeiture penalty in section 9-20 is triggered only *after* the State Board has "imposed" a "civil penalty" which remains unpaid after the date of certification. 10 ILCS 5/9-20 (West 2018). When the State Board imposes such a civil penalty, it does so through a final administrative order which *itself* may be appealed to this court under the Administrative Review Law. 10 ILCS 5/9-21, 9-22 (West 2018). The ballot forfeiture order is simply the end result of those proceedings, not a starting point to commence a duplicative round of proceedings. The State Board has already done what it needed to do and provided Mr. Winston with opportunities consistent with due process to remedy his situation. In sum, we are not persuaded by Mr. Winston's argument that plaintiff Washington was required to a do a useless act. See *Neely v. Coffey*, 81 Ill. 2d 439, 445 (1980) quoting *Leitch v. Sanitary Dist. of Chicago*, 386 Ill. 433 (1944) ("It is a well-recognized rule that equity will not require the performance of a useless act."). We therefore find that the circuit court of Cook County had subject matter jurisdiction over plaintiff Washington's complaint and that she was not required

to proceed under Article 9. Thus, rather than relying on Article 9, as the mechanism to seek relief, it was appropriate for her to bring this action in the circuit court of Cook County, under the facts presented.

¶ 22    Based on the undisputed facts of this case, Clerk Yarbrough had a ministerial, non-discretionary duty to implement the village's ballot certification with Winston's name omitted. Accordingly, the circuit court of Cook County, did not err in granting plaintiff Washington's motion for summary judgment and denying Clerk Yarbrough's cross-motion for summary judgment in which Mr. Winston joined.

¶ 23                              CONCLUSION

¶ 24    Accordingly, we affirm the judgment of the circuit court of Cook County. The partial stay entered by this court on March 5, 2021 is dissolved. The mandate shall issue *instanter*.

¶ 25    Affirmed.