2026 IL App (3d) 250284

Opinion filed April 20, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| CESAR GUERRERO, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee and Cross-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-25-0284 |
| | ) | Circuit No. 25-MR-73 |
| ANNETTE PARKER, in Her Official Capacity | ) | |
| as Will County Clerk, and ESTEFANY | ) | |
| BONILLA, in Her Official Capacity as the | ) | |
| Township Clerk for Joliet Township, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Annette Parker, in Her Official Capacity as | ) | Victoria R. Breslan, |
| Will County Clerk, Defendant-Appellant | ) | Brian E. Barrett, |
| and Cross-Appellee). | ) | Judges, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Presiding Justice Hettel and Justice Holdridge concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Defendant, Annette Parker, in her official capacity as Will County Clerk (County Clerk),

appeals from the circuit court's order finding in favor of plaintiff, Cesar Guerrero, on his claims

for declaratory relief and for a writ of *mandamus* to compel the County Clerk to place Guerrero's

name on the April 1, 2025, consolidated election ballot as the Democratic candidate for

Township Supervisor for Joliet Township in Will County (Township Supervisor). Guerrero cross-appeals from the circuit court's order granting the County Clerk's motion for summary judgment on his claim for deprivation of his constitutional rights in violation of section 29-17 of the Election Code (Code) (10 ILCS 5/29-17 (West 2024)). For the reasons set forth below, we affirm.

¶ 2                                           I. BACKGROUND

¶ 3        This is an election case involving placement of Guerrero on the April 1, 2025, consolidated election ballot. On October 29, 2024, the Illinois State Board of Elections (Board) sent a letter to "Elect Cesar Guerrero" (Campaign Committee), stating that there was a balance due of $6,550 in civil penalties and advising in relevant part,

> "If you plan to run for any office in the *2025 Consolidated Election* and have an unpaid civil penalty as of Thursday, January 23, 2025, the date the ballot is certified, your name will *not* appear on the April 1, 2025 Consolidated Election ballot. If your nominating petitions are filed with an election authority (county clerk or board of election commissioners)[,] payment must be received by the Board on or before 3:00 P.M. on Wednesday, January 22, 2025 in order for your name to appear on the ballot." (Emphases in original.)

¶ 4        On December 3, 2024, the Joliet Township Democratic Organization (Democratic Organization) held a caucus at which it nominated Guerrero as the Democratic candidate for the office of Township Supervisor. Nominating documents were filed with the Joliet Township Clerk (Township Clerk), and no objections were filed. However, on January 22, 2025, with Guerrero's $6,550 in civil penalties still outstanding, the Board sent a ballot forfeiture list, including Guerrero, to, *inter alia*, the County Clerk. Citing section 9-30 of the Code (*id.* § 9-30

2

(entitled "Ballot forfeiture")), the Board advised, "An election authority is barred from placing on the ballot the name of any candidate whose political committee has an unpaid civil penalty owed to the State Board of Elections."

¶ 5    In turn, on January 29, 2025, the County Clerk's Office e-mailed the Township Clerk, advising, "The following candidates for the April 1, 2025, Consolidated Election [specifying Guerrero] are on the Ballot forfeiture list provided by the State Board of Elections. So, they will have their name removed from the ballot." However, that same day—January 29, 2025— Guerrero paid the $6,550 in civil penalties. Later that same day, January 29, 2025, the Board sent the Campaign Committee a letter, stating:

"We are in receipt of your payment in the amount of $6550.00 for your payment of a civil penalty for the delinquent filing of campaign disclosure report(s). This payment is being forwarded to the State Treasurer for deposit in the General Revenue Fund.

Thank you for your compliance with the Illinois Campaign Disclosure Act."

¶ 6    Notwithstanding, on January 30, 2025, the Township Clerk notified Guerrero that his name had been removed from the April 1, 2025, ballot. Thereafter, on February 4, 2025, the Democratic Organization held a special meeting to fill the vacancy created by the removal of Guerrero from the April 1, 2025, ballot, at which Guerrero was unanimously reselected to fill the vacancy. On February 5, 2025, Guerrero filed with the Township Clerk an executed "Resolution To Fill A Vacancy In Nomination For The Office Of Township Supervisor" (Resolution) and nominating papers, including a copy of the January 29, 2025, receipt from the Board, reflecting payment in full of the civil penalties. (As noted in Guerrero's complaint, the Township Clerk's file stamp on the nominating papers reflects "2025 JAN-5." However, there was no dispute that it appeared the stamp was inadvertently not reset and that the filing date was in fact February 5,

3

2025.). No objections were filed, and the Township Clerk certified Guerrero for the April 1, 2025, ballot.

¶ 7　　　　However, the County Clerk refused to accept the certification of Guerrero's name to the ballot. Accordingly, the "Consolidated Election April 1, 2025 Candidate List," dated February 10, 2025, published by the County Clerk, reported that Guerrero's name was "removed" for "Ballot Forfeiture."

¶ 8　　　　　　　　　　　　A. TRO and Related Proceedings

¶ 9　　　　On February 14, 2025, Guerrero filed a three-count "Complaint For Writ Of Mandamus, Declaratory Judgment, And Deprivation Of Civil Rights" against the County Clerk and Township Clerk in their official capacities. (The Township Clerk was later dismissed from the case.) Guerrero alleged that the Township Clerk is charged with the statutory duty of certifying the ballots for township elections; that the County Clerk is charged with the statutory duty of printing and placing candidates' names on the ballots; and that these duties are ministerial and not discretionary. Count I sought a writ of *mandamus* to compel the Township Clerk to ensure Guerrero's name has been certified as the Democratic party candidate for Township Supervisor on the April 1, 2025, ballot and that the County Clerk accept such certification and print Guerrero's name on the ballot. Count II sought a declaratory judgment that Guerrero is entitled to have his name certified and placed on the ballot. Count III alleged an intentional deprivation of constitutional rights in violation of 42 U.S.C. § 1983 (2024) and in violation of section 29-17 of the Code (10 ILCS 5/29-17 (West 2024) ("Any person who subjects, or causes to be subjected, a citizen of the State of Illinois or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States or of the State of Illinois, relating to registration to vote, the conduct of elections,

4

voting, or the nomination or election of candidates for public or political party office, shall be liable to the party injured or any person affected, in any action or proceeding for redress.")). Guerrero sought monetary and punitive damages for the alleged unlawful conduct in keeping his name off the ballot. Guerrero subsequently withdrew that portion of count III alleging a section 1983 violation.

¶ 10　　On February 18, 2025, Guerrero also filed a "Verified Emergency Motion For Expedited Presentment And For Temporary Restraining Order," requesting an expedited hearing on his complaint and a temporary restraining order (TRO) compelling the County and Township Clerks to certify and print Guerrero's name as the Democratic Party's nominee for the office of Township Supervisor on the April 1, 2025, ballot. On February 20, 2025, the County Clerk filed a response, arguing that (1) Guerrero was not eligible to be placed on the ballot under section 9-30 of the Code notwithstanding his January 29, 2025, payment, because he was on the Board's ballot forfeiture list on January 23, 2025—the date of the Board's ballot certification, and (2) the February 4, 2025, nomination did not comply with the eight-day time limit for filling a vacancy in nomination as set forth in section 7-61 of the Code (*id.* § 7-61 (entitled "Special elections; call and notice of primary; vacancies")). The County Clerk attached a "Final Order" from the Board against the Campaign Committee, dated January 20, 2023, assessing $6,550 in civil penalties due to delinquent filing of quarterly reports, as well as several prior notices to the Campaign Committee, advising that Guerrero would not appear on the ballot if the penalties were not paid by the specified dates.

¶ 11　　On February 20, 2025, the circuit court (Judge Victoria R. Breslan) held an agreed emergency hearing, at which Guerrero testified and acknowledged the campaign finance violations due to missed quarterly reports and the Board notices to pay the penalties. Following

5

the parties' arguments, the circuit court took the matter under advisement and continued the matter to the next day.

¶ 12                                1. Circuit Court's Ruling

¶ 13         On February 21, 2025, the circuit court found in favor of Guerrero and entered an order directing the County Clerk to include Guerrero's name on the April 1, 2025, ballot for the office of Township Supervisor. The court stated that it would enter an order detailing its findings within seven days. The circuit court entered a judgment order on February 25, 2025, setting forth the rationale for its entry of judgment in Guerrero's favor. The circuit court rejected the County Clerk's argument that section 9-30 of the Code banned a candidate from all ballots during a particular election cycle if the candidate pays civil penalties after the ballot certification date. Section 9-30 provides in relevant part that

> "[t]he election authority shall not place upon the ballot the name of any candidate appearing on this list for any office in any election while the penalty is unpaid, unless the candidate has requested a hearing and the Board has not disposed of the matter by the date of certification." *Id.* § 9-30.

Citing this plain language, the circuit court reasoned that, as of January 29, 2025 (the date that the County Clerk provided notice to the Township Clerk that Guerrero would be removed from the ballot), it was undisputed that Guerrero had no unpaid penalties. Thus, the circuit court determined that allowing Guerrero on the ballot after he paid his penalties was in conformity with the legislative intent of section 9-30 "to ensure the fines assessed against Illinois campaign committees are paid, not to prevent ballot access by candidates who may experience a delay in obtaining the funds to pay outstanding fines." Moreover, the circuit court reasoned that, even if Guerrero had been properly removed from the ballot after his initial nomination, "that candidacy

6

is not the same candidacy filled by the Joliet Township Democratic organization on February 4, 2025." As such, there were no outstanding penalties following Guerrero's renomination to warrant removal from the ballot.

¶ 14        In addition, the circuit court found that the eight-day countdown for vacancy action (see *id.* § 7-61 (providing, *inter alia*, that "[a]ny vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy")), began, at the earliest, on January 29, 2025. Thus, when the vacancy was filled by the February 4, 2025, Resolution, there was no timeliness basis to refuse to print Guerrero's name on the ballot.

¶ 15        On February 24, 2025, Guerrero filed an emergency petition for rule to show cause and to compel compliance with the circuit court's February 21, 2025, written order. According to the petition, the County Clerk's website had not been updated to reflect Guerrero as a candidate and, when Guerrero's counsel complained, the website was updated to include the following notation next to Guerrero's name: "Ballot Forfeiture, per Judge name will be printed on ballot." On February 26, 2025, the circuit court ordered immediate removal of the notation but ultimately denied Guerrero's petition following briefing and argument.

¶ 16                                2. Interlocutory Appeal

¶ 17        Meanwhile, on February 21, 2025, the County Clerk filed a notice of interlocutory appeal from the circuit court's February 21, 2025, order and subsequently filed a petition for review and supporting memorandum pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017). The County Clerk argued that Guerrero failed to demonstrate a likelihood of success on the merits for purposes of obtaining a TRO, could not obtain equitable relief due to "unclean hands,"

7

and failed to show that any harm to him would outweigh the harm to the public from the precedent the case would set for candidates who violate election laws.

¶ 18 On February 25, 2025, Guerrero countered with a motion to dismiss the appeal for lack of jurisdiction. Guerrero argued, in relevant part, that the order entered by the circuit court was a final judgment on the merits of counts I and II, not a TRO, and thus there was no jurisdiction under Rule 307—applicable only to interlocutory orders—and that count III remained pending in the circuit court. The County Clerk disputed the permanent nature of the order and maintained that we had jurisdiction under Rule 307. On February 28, 2025, this court entered an order allowing the motion to dismiss and dismissing the County Clerk's appeal for lack of jurisdiction. *Guerrero v. Parker*, No. 3-25-0095 (Ill. App. Ct. Feb. 28, 2025).

¶ 19 Back in the circuit court, the County Clerk filed an emergency motion to amend the February 25, 2025, order to include a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying either the enforcement or appeal of the order notwithstanding that count III remained pending. Guerrero filed a response in opposition to the motion, arguing that the unadjudicated claim in count III was closely related and stemmed from the same factual allegations underlying the adjudicated claims in counts I and II such that a Rule 304(a) finding was not warranted and would lead to redundant, piecemeal appeals. Following argument, on March 10, 2025, the circuit court denied the motion to include a Rule 304(a) finding in the February 25, 2025, order.

¶ 20                                 B. Proceedings on Count III

¶ 21 On March 10, 2025, the County Clerk filed a jury demand, and the case was administratively transferred to Judge Brian E. Barrett. The County Clerk also filed an answer and affirmative defenses to count III of Guerrero's complaint with a supporting affidavit and

8

exhibits, including the Board's October 29, 2024, correspondence to the Campaign Committee regarding the outstanding penalties and the Board's January 22, 2025, ballot forfeiture list with Guerrero's name sent to the County Clerk. The affirmative defenses alleged that relief should be denied under section 9-30 of the Code, due to the outstanding penalties, and that the vacancy was filled outside the time limits of section 7-61 of the Code. The affirmative defenses also alleged immunity from liability under various provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), including section 2-202 (745 ILCS 10/2-202 (West 2024) ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.")). Subsequently, Guerrero moved to strike the affirmative defenses.

¶ 22    Then, on March 11, 2025, the County Clerk filed an emergency motion for judgment on the pleadings, arguing that she was immune from liability as a matter of law on count III under the Tort Immunity Act, including that she was merely enforcing the law and, thus, immune under section 2-202. In opposition, Guerrero argued that judgment on the pleadings was not warranted where the County Clerk continued to deny the material allegations. Guerrero also argued that the Tort Immunity Act applies only to tort claims and does not bar actions for constitutional violations. Thus, according to Guerrero, the Tort Immunity Act did not preclude liability for count III, which sought damages for a constitutional violation pursuant to section 29-17 of the Code. Guerrero further argued in relevant part that, even if the Tort Immunity Act applied to his claim, the County Clerk was not immune under section 2-202 because her alleged conduct was willful and wanton. Following argument, on March 20, 2025, the circuit court granted in part Guerrero's motion to strike the affirmative defenses, striking those defenses based on sections 9-30 and 7-61 of the Code on the ground that the defenses amounted to mere denials of the

9

allegations in Guerrero's complaint. The circuit court also denied the County Clerk's motion for judgment on the pleadings, finding that there was a question of fact as to the allegation that the County Clerk abused her position in keeping Guerrero off the ballot.

¶ 23    The County Clerk subsequently served interrogatories, document requests, and a notice of deposition on Guerrero and deposition subpoenas on the Democratic Organization committeepersons who voted to fill the vacancy for Township Supervisor. Then, on March 25, 2025, the County Clerk filed a motion for summary judgment on count III, arguing that the following material facts were undisputed: (1) the County Clerk received from the Board a ballot forfeiture list, which included Guerrero; (2) on January 23, 2025, the County Clerk removed Guerrero's name from the April 1, 2025, consolidated election ballot, as Guerrero was still on the ballot forfeiture list; (3) Guerrero paid his civil penalties after ballot certification on January 29, 2025; (4) on February 4, 2025, Guerrero was appointed to fill the vacancy on the ballot "caused by his own forfeiture"; (5) after the appointment, the County Clerk refused to accept certification of Guerrero's name; and (6) Guerrero was restored to the ballot pursuant to the circuit court's February 21, 2025, ruling. Accordingly, the County Clerk argued that she was immune from liability as a matter of law, pursuant to section 2-202, because she merely enforced the ballot forfeiture list. The County Clerk also argued that she was entitled to summary judgment on count III because there was no evidence that Guerrero suffered any damages, given that he had won the election. The County Clerk further argued that, while attorney fees were available under the dismissed section 1983 claim, attorney fees are not available under the remaining section 29-17 claim.

¶ 24    On April 3, 2025, Guerrero filed a motion to quash the subpoenas and stay discovery until adjudication of the summary judgment motion. Guerrero's position was that liability had

10

already been established and that the only remaining issue was damages. Thus, Guerrero argued that the discovery requests were harassing and an abuse of process. On April 7, 2025, the County Clerk filed a motion for leave of 21 days "in which to file an Amended Motion for Summary Judgment following discovery." Then, on April 8, 2025, Guerrero filed a response in opposition to summary judgment, arguing that the County Clerk's motion lacked any supporting documents, that the material facts remained in dispute, and that the County Clerk's argument was merely an attempt to relitigate the merits of counts I and II. Guerrero did not reassert his argument regarding the nonapplicability of the Tort Immunity Act.

¶ 25    On April 9, 2025, following argument, the circuit court entered an order, granting Guerrero's motion to quash the subpoenas and stay discovery and stating that the County Clerk "has until April 11, 2025 to file a 191(b) or other pleadings." In her April 11, 2025, reply in support of summary judgment on count III, the County Clerk stated that she is "declining to file a Rule 191(b) affidavit despite need for additional discovery and will stand on her Motion and this Reply." The County Clerk also asserted that her answer to the complaint was supported by affidavit and supporting exhibits, including the letter Guerrero received from the Board regarding the need to pay the outstanding penalties by the ballot certification date.

¶ 26    Following argument, on May 8, 2025, the circuit court granted summary judgment in the County Clerk's favor, finding that, while there was evidence of damages, there were no questions of material fact with respect to liability. Rather, the circuit court reasoned that the County Clerk simply followed the law in removing Guerrero from the ballot upon receipt of the Board's ballot forfeiture list. The circuit court explained that it had a "disagreement with the prosecutor's argument as to immunity" but that "[p]erhaps we are just intermingling our terms." The circuit court elaborated, "You call it immunity. I call it whether it's a statutory violation or

11

not." Regardless, the circuit court reasoned that the County Clerk "didn't do anything illegal" and "didn't do anything to subject Mr. Guerrero to abuse o[f] discretion." The circuit court further stated, "In this Court's view, it was not discretionary. She got the letter from the State Board of Elections. She read the law. She saw Mr. Guerrero's name, and she acted according to the law." Thus, the circuit court found no genuine issues of material fact as to Guerrero's claim under section 29-17 of the Code and granted summary judgment in the County Clerk's favor on count III.

¶ 27 The County Clerk timely filed a notice of appeal from the circuit court's ruling on counts I and II; Guerrero timely filed a notice of cross-appeal from the circuit court's ruling on count III. Meanwhile, however, on April 1, 2025, the consolidated election was held, and Guerrero was elected to the position of Township Supervisor. On April 22, 2025, Guerrero was certified as the Township Supervisor. Thus, on August 15, 2025, Guerreo filed a motion to dismiss the County Clerk's appeal for lack of jurisdiction, arguing that the appeal is moot because the election is over, he won, and he is actively serving as Township Supervisor. As such, according to Guerrero, there is no relief to be rewarded. The County Clerk filed a response in opposition to the motion to dismiss, arguing that the appeal is not moot and that, regardless, the appeal may be decided under the public interest exception to the mootness doctrine. We entered an order taking the motion to dismiss for lack of jurisdiction with the case.

¶ 28                                              II. ANALYSIS

¶ 29 On appeal, the County Clerk challenges the circuit court's order granting Guerrero's request for a writ of *mandamus* and declaratory judgment on counts I and II, which required the County Clerk to accept Guerrero's nominating papers and print his name on the ballot for the April 1, 2025, consolidated election. On cross-appeal, Guerrero argues that the circuit court erred

12

in granting summary judgment in the County Clerk's favor on his claim in count III for deprivation of his constitutional rights under section 29-17 of the Code.

¶ 30     However, prior to addressing the merits of the parties' arguments, we turn to Guerrero's motion to dismiss the County Clerk's appeal for lack of jurisdiction. See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) (a reviewing court must ascertain the threshold question of its jurisdiction before considering the merits of an appeal).

¶ 31     A. Jurisdiction

¶ 32     "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). An appeal is moot when no actual controversy exists or when events transpire that render it impossible for the reviewing court to grant effectual relief. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. Initially, the parties dispute the mootness of this appeal. Guerrero argues that his name was certified and printed on the ballot; he won the election; and he has been serving as Township Supervisor since May 19, 2025. Thus, Guerrero argues that there is no effectual relief for this court to award with respect to ballot placement.

¶ 33     The County Clerk responds that relief may still be granted, despite the completion of the election, citing *Delgado v. Board of Election Commissioners of Chicago*, 224 Ill. 2d 481 (2007). The County Clerk's reliance on *Delgado* is misplaced, as, there, our supreme court granted supervisory relief with respect to a candidate's ineligibility to run for office and removal from the ballot in an imminent, but not yet held, election. See *id.* at 489. In contrast, here, the April 1, 2025, consolidated election is over, and Guerrero is actively serving in his role as Township Supervisor. Accordingly, the County Clerk's appeal is moot. See *Elsamny v. Peoria County*

13

*Board of Election Commissioners*, 2018 IL App (3d) 170295, ¶ 10 (" 'It is well established under Illinois law that the conclusion of an election cycle normally moots an election contest.' " (quoting *Jackson v. Board of Election Commissioners of Chicago*, 2012 IL 111928, ¶ 36)).

¶ 34    Alternatively, if her appeal is moot, the County Clerk maintains that we should decide the case pursuant to the public interest exception to the mootness doctrine. We review application of the public interest exception *de novo*. *McHenry Township Road District v. Pritzker*, 2021 IL App (2d) 200636, ¶ 37. "The public interest exception to the mootness doctrine permits review of an otherwise moot question when the magnitude or immediacy of the interests involved warrants action by the court." *Commonwealth Edison*, 2016 IL 118129, ¶ 12. The public interest exception is narrowly construed and requires a clear showing that (1) the question presented is of a public nature, (2) an authoritative determination of the question is desirable for the future guidance of public officers, and (3) the question is likely to recur. *Id.* ¶¶ 12-13. "If any one of the criteria is not established, the exception may not be invoked." *Id.* ¶ 13. We address each criterion in turn and conclude that the County Clerk established that the public interest exception applies in this case.

¶ 35    First, as to the public nature of the question presented, whether Guerrero was eligible to be placed on the April 1, 2025, consolidated election ballot involves an election issue. Questions of election law are " 'inherently *** a matter of public concern' " sufficient to invoke the public interest exception to prevent uncertainty in the electoral process. *McHenry Township Road District*, 2021 IL App (2d) 200636, ¶ 51 (quoting *Goodman v. Ward*, 241 Ill. 2d 398, 404-05 (2011)). Moreover, resolution of Guerrero's eligibility to the placed on the ballot involves the interpretation of sections 9-30 and 7-61 of the Code. Issues involving statutory construction are " 'of broad public interest and therefore of a public nature.' " *Id.* ¶ 40 (quoting *People v.*

14

*Horsman*, 406 Ill. App. 3d 984, 986 (2011)). Thus, the question presented satisfies the public nature criterion.

¶ 36     Second, concerning whether an authoritative determination of the question presented is desirable for future guidance of public officials, a ruling here would "avoid[ ] the uncertainty in the electoral process which inevitably results when threshold eligibility issues cannot be fully resolved before voters begin casting their ballots." *Jackson*, 2012 IL 111928, ¶ 44.

¶ 37     Third, as to the likelihood that the question presented will recur, the County Clerk points out that the ballot forfeiture list included numerous other candidates with outstanding penalties. Thus, there is a likelihood that a challenge to resulting ballot eligibility will recur. Guerrero counters that the issue of "candidates who pay their civil penalty late" is a case of first impression and that this is a "one-off" case such that such that recurrence of the issue is not likely. However, "[c]ase law demonstrates that even issues of first impression may be appropriate for review under [the public interest] exception." *In re Shelby R.*, 2013 IL 114994, ¶ 20. Moreover, that the complaining party would be different is not determinative in resolving application of the public interest exception, as " '[t]he public-interest exception considers potential recurrences to any person, not only the complaining party.' " *McHenry Township Road District*, 2021 IL App (2d) 200636, ¶ 62 (quoting *In re Christopher P.*, 2012 IL App (4th) 100902, ¶ 20).

¶ 38     In sum, the County Clerk established that application of the public interest exception is warranted in this case. We therefore deny Guerreo's motion to dismiss the County Clerk's appeal and turn to the merits of the parties' arguments.

15

¶ 39            B. County Clerk's Appeal: Counts I and II

¶ 40        In challenging the circuit court's order granting Guerrero's request for a writ of *mandamus* and declaratory judgment on counts I and II, the County Clerk argues that (1) Guerrero was not eligible to be placed on the ballot under section 9-30 of the Code, given that he was on the Board's ballot forfeiture list on January 23, 2025—the date of the Board's ballot certification, and (2) the February 4, 2025, nomination did not comply with the eight-day time limit for filling a vacancy in nomination as set forth in section 7-61 of the Code. Where, as here, the issues on appeal involve purely legal questions of statutory interpretation, we apply the *de novo* standard of review. See *Pitts v. Kolitwenzew*, 2020 IL App (3d) 190267, ¶ 19 (*mandamus*); *In re Marriage of Kranzler*, 2018 IL App (1st) 171169, ¶ 39 (declaratory judgment); *Swigert v. Gillespie*, 2012 IL App (4th) 120043, ¶ 28 (permanent injunction).

¶ 41        In construing the Code, we employ the same principles of statutory construction applicable to statutes generally. *Maloney v. Janecyk*, 2025 IL App (1st) 250043, ¶ 13. The primary objective is to ascertain and give effect to the legislature's intent. *Id.* The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* Where the statutory language is clear and unambiguous, we will enforce it as written and not read into it exceptions, conditions, or limitations not expressed by the legislature. *Id.* Moreover, where reasonably possible, we interpret election statutes in favor of, not against, ballot access. *Id.* ¶ 14. As our supreme court has recognized, courts must "tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997); see *McGuire v. Nogaj*, 146 Ill. App. 3d 280, 282 (1986) (statutes imposing disqualification should be construed to resolve all doubts in favor of a candidate's eligibility).

16

¶ 42    We are also mindful that "[t]he primary purpose of all election laws is to ensure a fair and honest election" (see *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699, ¶ 19) and that "[t]he provisions of the Election Code are designed to protect the integrity of the electoral process" (see *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 460 (2008)). Notwithstanding, Illinois regards ballot access as a substantial right that is not to be denied lightly. *Id.* at 460-61. With these principles in mind, we address the parties' arguments.

¶ 43                                    1. Section 9-30

¶ 44    Section 9-30 provides:

"The State Board of Elections shall not certify the name of any person who has not paid a civil penalty imposed against his or her political committee under this Article to appear upon any ballot for any office in any election if the penalty is unpaid by the date required for certification.

The State Board of Elections shall generate a list of all candidates whose political committees have not paid any civil penalty assessed against them under this Article. Such list shall be transmitted to any election authority whose duty it is to place the name of any such candidate on the ballot. *The election authority shall not place upon the ballot the name of any candidate appearing on this list for any office in any election while the penalty is unpaid*, unless the candidate has requested a hearing and the Board has not disposed of the matter by the date of certification." (Emphasis added.) 10 ILCS 5/9-30 (West 2024).

¶ 45    The County Clerk asserts that the ballot forfeiture rule is mandatory, as evidenced by the statute's repeated use of the word "shall." She emphasizes that section 9-30 does not provide any

17

exceptions for being on the ballot if a candidate pays his penalties past the ballot certification date. The plain language of the statute does not support the County Clerk's argument. Rather, the statute provides that the election authority—in this case, the County Clerk—shall not place a candidate whose name appears on the ballot forfeiture list on the ballot "*while* the [civil] penalty is unpaid." (Emphasis added.) *Id.* Use of the term "while" is determinative of the issue before us, although it is not defined in the Code. Thus, we presume that the "legislature intended the term to have its ordinary and popularly understood meaning." *People v. Diggins*, 235 Ill. 2d 48, 55 (2009). "While," in its conjunctive form, means "during the time that" or "as long as." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/while (last visited Apr. 10, 2026) [https://perma.cc/8GFT-4S22].

¶ 46     Accordingly, as used in section 9-30, the term "while" operates to define a circumstance that, *when in existence*, prevents the election authority from placing a candidate's name on the ballot. Stated otherwise, a candidate cannot be placed on the ballot *during the time that* the candidate's penalties are unpaid. Inversely, it follows that, assuming no other statutory barriers exist, a candidate *can* be placed on the ballot if the penalties *are* paid. As the circuit court reasoned, the plain language of section 9-30 does not condition inclusion on the ballot upon payment *before* the certification date; rather, the statute conditions inclusion upon payment only. On January 29, 2025, the County Clerk sent notice that Guerrero *would* be removed from the ballot; however, at some point on January 29, 2025, Guerrero had no unpaid penalty. Section 9-30 was inapplicable once Guerrero paid his penalties.

¶ 47     Moreover, to the extent the County Clerk appropriately relied on section 9-30 to remove Guerrero from the ballot on January 29, 2025, or January 30, 2025, that candidacy is distinguishable from the candidacy Guerrero ultimately sought. A vacancy on the ballot was

18

created as early as January 29, 2025, due to Guerrero's nonpayment; Guerrero was subsequently renominated to fill said vacancy. This resulted in Guerrero's submission of February 4, 2025, nominating papers, and it is undisputed that, on this date, he did not have any outstanding penalties. As such, section 9-30 was not properly employed by the County Clerk to refuse to print Guerrero's name on the ballot. Simply put, the guiding principles of statutory construction do not support the County Clerk's interpretation of section 9-30.

¶ 48        In so concluding, we agree with the circuit court that the legislative intent of section 9-30 "is to ensure the fines assessed against Illinois campaign committees are paid, not to prevent ballot access by candidates who may experience a delay in obtaining the funds to pay outstanding fines" and that the intent was met here by the payment of the penalties. Adopting the County Clerk's interpretation of section 9-30 would require us to read into the statute an unexpressed limitation that a candidate is barred from being placed on the ballot for an entire election cycle if the candidate does not pay his penalties by a certain date, which we cannot do. See *Maloney*, 2025 IL App (1st) 250043, ¶ 13 (where the statutory language is clear and unambiguous, we will enforce it as written and not read into it exceptions, conditions, or limitations not expressed by the legislature). Rather, because the statutory language reasonably allows it, we interpret the language of section 9-30 in favor of ballot access once the penalties are paid. See *id.* ¶ 14.

¶ 49        Nor is the County Clerk's reliance on *Washington v. Winston*, 2021 IL App (1st) 210225-U, availing for the proposition that she had a duty to adhere to the ballot forfeiture list. In *Washington*, the county clerk printed a candidate's name on the ballot, despite the fact that the candidate appeared on a ballot forfeiture list and had not paid his penalties or requested a hearing before the Board to resolve his delinquency and forfeiture. *Id.* ¶¶ 3-4. The circuit court issued a

19

writ of *mandamus* to the county clerk to remove the candidate from the ballot. *Id.* ¶ 9. In affirming, the appellate court held that, pursuant to section 9-30, the county clerk had a ministerial, non-discretionary duty to omit the candidate's name from the ballot. *Id.* ¶¶ 19, 21-22. Here, unlike in *Washington*, Guerrero *did* pay his penalties, thereby removing any basis under section 9-30 to omit Guerrero's name from the ballot.

¶ 50 In sum, we reject the County Clerk's reliance on section 9-30 as a basis for reversal.

¶ 51                                          2. Section 7-61

¶ 52 The relevant portion of section 7-61 provides:

> "Any vacancy in nomination under the provisions of this Article 7 occurring on or after the primary and prior to certification of candidates by the certifying board or officer must be filled prior to the date of certification. *Any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy.* The resolution filling the vacancy shall be sent by U.S. mail or personal delivery to the certifying officer or board within 3 days of the action by which the vacancy was filled ***." (Emphasis added.) 10 ILCS 5/7-61 (West 2024).

¶ 53 The County Clerk argues that, even if the late payment of Guerrero's fines permitted him to fill a vacancy on the ballot, the filling of that vacancy pursuant to the February 4, 2025, nomination was outside the eight-day time frame required under section 7-61. According to the County Clerk, the event that caused the vacancy was the ballot forfeiture date of January 23, 2025. Thus, the County Clerk argues that the last day to fill the vacancy was eight days later, on January 31, 2025.

20

¶ 54 However, to the extent the County Clerk looked beyond the four corners of Guerrero's February 4, 2025, nominating papers to determine that they did not comply with section 7-61, she exceeded her ministerial authority. Section 10-8 of the Code provides that, with exceptions not relevant here,

> "certificates of nomination and nomination papers, *** being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers." *Id.* § 10-8.

The question is one of "apparent conformity," *i.e.*, the clerk must accept nominating papers that are in apparent conformity with the Code. *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶¶ 81-82 (citing *North v. Hinkle*, 295 Ill. App. 3d 84, 88-89 (1998); *People ex rel. Giese v. Dillon*, 266 Ill. 272, 275-76 (1914)). In other words, a ministerial officer may not look beyond the face of the filings to determine whether the filings comply with the law. *Dillon*, 266 Ill. at 275-76.

¶ 55 Here, Guerrero's nominating papers reflected no facial deficiency with respect to the alleged failure to comply with the eight-day requirement set forth in section 7-61 of the Code. Rather, the nominating papers stated that the vacancy in nomination "occurred January 30, 2025, when the Will County Clerk vacated the seat." Thus, on the face of the nominating papers, the vacancy in nomination was filled by the Resolution within eight days of the event creating the vacancy.

¶ 56 In determining otherwise, the County Clerk considered information outside the four corners of the nominating papers. This information included that Guerrero, in the course of his *initial* nomination and certification, had failed to pay his penalties by January 23, 2025. The

21

County Clerk cannot call upon direct knowledge stemming from her duties to contradict the information contained on the face of the filings. See *id.* Doing so in this instance required the County Clerk to go beyond her ministerial role and perform an act of statutory interpretation to determine the meaning of the phrase "the event creating the vacancy," deeming it to be the date upon which Guerrero's fine was due, as opposed to the date the County Clerk removed Guerrero's name from the ballot. Exceeding the scope of her ministerial duties, the County Clerk then applied her statutory interpretation to facts outside the four corners of the filings.

¶ 57 Moreover, in considering the plain language of section 7-61 and keeping in mind that election statutes should be construed in favor of ballot access, we agree with the circuit court that the vacancy began either when the County Clerk informed the Township Clerk that Guerrero's name would not be on the ballot (January 29, 2025) or when the Township Clerk informed Guerrero that the County Clerk had taken that action (January 30, 2025). The February 4, 2025, nomination date was within eight days of either of those dates. Accordingly, we likewise reject the County Clerk's reliance on section 7-61 as a basis for reversal.

¶ 58 As a final matter with respect to counts I and II, the County Clerk, in her reply brief, contends that Guerrero was not entitled to equitable relief because he lacked "clean hands" in that he incurred thousands of dollars in penalties that were paid only after being removed from the ballot. "The doctrine of 'unclean hands' precludes a party from taking advantage of his own wrong" and "applies if the party seeking equitable relief is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought if that misconduct is connected with the transaction at issue." *Long v. Kemper Life Insurance Co.*, 196 Ill. App. 3d 216, 219 (1990). However, as Guerrero argues, the County Clerk forfeited this argument by failing to raise it in the circuit court and failing to raise it in her opening brief on appeal. See Ill. S. Ct. R. 341(h)(7)

22

(eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief \*\*\*."); *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 453 (2007) (issues not raised in the circuit court may not be raised for the first time on appeal). We further note, for the sake of analysis, that there was no evidence of misconduct, fraud, or bad faith on the part of Guerrero. Moreover, to the extent that the penalties had been paid when Guerrero was renominated, his hands were clean as it relates to the February 4, 2025, nomination.

¶ 59                                    C. Guerrero's Cross-Appeal: Count III

¶ 60            Guerrero appeals the grant of summary judgment as to count III on the ground that there were genuine issues of material fact as to both liability and (as the circuit court found) damages. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). A triable issue of fact exists where the material facts are disputed or where, although the material facts are undisputed, reasonable minds might draw different inferences from those facts. *Id.* at 162-63. We review summary judgment rulings *de novo. Id.* at 163.

¶ 61            As set forth above, count III alleged an intentional deprivation of his constitutional rights in violation of section 29-17 of the Code, which provides:

    "Any person who subjects, or causes to be subjected, a citizen of the State of Illinois or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

23

immunities secured by the Constitution or laws of the United States or of the State of Illinois, relating to registration to vote, the conduct of elections, voting, or the nomination or election of candidates for public or political party office, shall be liable to the party injured or any person affected, in any action or proceeding for redress." 10 ILCS 5/29-17 (West 2024).

¶ 62   "The language and purpose of section 29-17, which is modeled after section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2012)), creates a private cause of action for violations of an individual's election-related federal and state constitutional rights." *Dempsey v. Johnson*, 2016 IL App (1st) 153377, ¶ 48. In *Dempsey*, the plaintiff—a candidate for the village president— alleged that the defendant—the village clerk—removed the plaintiff's nominating papers from her office and took them home to assist the plaintiff's opponent in formulating a challenge to the plaintiff's candidacy. *Id.* ¶ 3. The plaintiff's opponent succeeded in her challenge before the electoral board, on which the defendant sat, and the electoral board ordered that the plaintiff's name be removed from the ballot. *Id.* ¶¶ 3-4. The circuit court, however, reversed the electoral board's decision and reinstated the plaintiff's name to the ballot. *Id.* ¶ 5. The plaintiff further alleged that, the evening before the election, the defendant disseminated a "robocall" to registered voters, falsely stating that the plaintiff was not a legitimate candidate and had been officially removed from the ballot and that any votes cast in her favor would be a " 'lost vote.' " *Id.* ¶ 6. After the plaintiff lost the election, she filed a two-count complaint under section 29-17 and section 1983, alleging that the defendant deprived her of her right to freedom of association by retaliating against her for her political affiliation as an independent candidate, violated her right to equal protection by treating her differently from other candidates, and violated the express prohibition on the use of public funds to urge electors to vote for or against a candidate,

as set forth in section 9-25.1(b) of the Code (10 ILCS 5/9-25.1(b) (West 2012)). *Dempsey*, 2016 IL App (1st) 153377, ¶¶ 6-7.

¶ 63    The appellate court reversed in part the circuit court's dismissal of the plaintiff's claims. Relevant here, the appellate court rejected the defendant's argument that dismissal of the complaint was warranted because her conduct in placing the robocall was protected by section 2-210 of the Tort Immunity Act (745 ILCS 10/2-210 (West 2012) ("A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.")). *Dempsey*, 2016 IL App (1st) 153377, ¶ 53. Noting that section 2-210 immunizes only negligent conduct and taking as true the plaintiff's allegations that the defendant willfully and wantonly provided false information to the voters with the intent to suppress the vote and cause the plaintiff injury, the appellate court reasoned that section 2-210 did not shield the defendant from liability. *Id.* ¶¶ 55-57.

¶ 64    Here, the County Clerk maintains that she was enforcing section 9-30 of the Code and, thus, was entitled to immunity under section 2-202 of the Tort Immunity Act. See 745 ILCS 10/2-202 (West 2024) ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). We note that Guerrero does not, as he did below, dispute the applicability of the Tort Immunity Act to actions for constitutional violations. Rather, he contends that there remain genuine issues of material fact as to whether the County Clerk acted willfully and wantonly. Guerrero's position is that summary judgment should have been denied for the same reason judgment on the pleadings was denied—that there were genuine issues of material fact as to whether the County Clerk abused her position in keeping Guerrero off the ballot. See *In re Appointment of Special*

25

*Prosecutor*, 2019 IL 122949, ¶ 52 (a motion for judgment on the pleadings "is essentially a motion for summary judgment that is limited to the pleadings").

¶ 65    However, the procedural posture is such that we are reviewing the grant of summary judgment, not the denial of judgment on the pleadings. We resolve whether the pleadings, depositions, and admissions on file—together with the affidavits, if any—show that there is no genuine issue as to any material fact, such that the County Clerk is entitled to a judgment as a matter of law on count III. See 735 ILCS 5/2-1005(c) (West 2024). Here, there were no depositions or discovery responses. Rather, Guerrero sought and obtained a stay of discovery, pending adjudication of the County Clerk's summary judgment motion. We are therefore left with Guerrero's complaint and the County Clerk's answer and affirmative defense of immunity under section 2-202, which included a supporting affidavit and exhibits, including the Board's October 29, 2024, correspondence to the Campaign Committee regarding the outstanding penalties and the Board's January 22, 2025, ballot forfeiture list with Guerrero's name sent to the County Clerk.

¶ 66    Guerrero maintains that, because the County Clerk denied the material allegations in his complaint, "the pleadings, on their face, establish that there are genuine issues of material fact that prohibit summary judgment for [the County Clerk]." However, Guerrero's complaint reflects unsupported conclusions of law that the County Clerk illegally refused to print his name on the ballot and violated his constitutional rights in doing so. These allegations are nothing like *Dempsey*, where the defendant allegedly provided false information to the voters via a robocall, with the intent to suppress the vote. See *Dempsey*, 2016 IL App (1st) 153377, ¶ 6. Although we have held that the County Clerk's interpretation of the Code was incorrect, this does not equate to willful and wanton conduct. Ultimately, Guerrero points to no persuasive basis in the record to

26

preclude judgment in the County Clerk's favor on count III. Thus, having reviewed the entirety of the record, we cannot say that the trial court erred in granting summary judgment in the County Clerk's favor on count III.

¶ 67                                    III. CONCLUSION

¶ 68           For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 69           Affirmed.

*Guerrero v. Parker*, 2026 IL App (3d) 250284

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 25-MR-73; the Hon. Victoria R. Breslan and the Hon. Brian E. Barrett, Judges, presiding. |
| **Attorneys for Appellant:** | James W. Glasgow, State's Attorney, of Joliet (Scott Pyles and Erika M. Hamer, Assistant State's Attorneys, of counsel), for appellant. |
| **Attorneys for Appellee:** | Burton S. Odelson and Jayman A. Avery III, of Odelson, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, for appellee. |